PAINE, Administrator, Appellant, vs. EASTERN RAILWAY COMPANY OF MINNESOTA, Respondent.

*October 23 — November 8, 1895.*

*Railroads: Killing of switchman in yard: Defective blocking of guard rail at frog: Negligence: Assumption of risk: Court and jury: Evidence.*

1. If all the blocking of the many guard rails in an extensive railroad yard was uniformly defective in its original construction, it would seem that a switchman who had been employed for nine or ten

Paine vs. Eastern R. Co. of Minnesota.

months in the yard should have known and appreciated the danger and risk, if any; but if only the particular blocking alleged to have caused his death was defective in construction, he could not, as a matter of law, be charged with assumption of the risk.

2. In an action for the death of a switchman who was run over in the yard and whose foot, it was alleged, had been caught by reason of defective blocking between a guard rail and the main rail, evidence that the blocking in question had become defective from gradual wear was sufficient to take to the jury the question of the negligence of the railroad company, without proof that it had actual notice of the defect, since it owed to its yard employees the duty of vigilant inspection to discover and remedy such defects.

3. The evidence in this case — showing among other things that after the switchman was run over his foot was between the guard rail and main rail a few inches from the flaring opening between them and in the direction in which the car which ran over him was moving — is *held* sufficient to take to the jury the question whether the accident was caused by the defective blocking.

4. The fact that the deceased was in front of the car would not justify the court in holding, as matter of law, that he was guilty of contributory negligence, since his duties as switchman were or might have been there.

5. Evidence that as the guard rails were usually blocked in that yard it was impossible for the foot to be caught was admissible to show that the particular blocking in question was out of repair.

6. It was proper also to show that if guard rails are properly blocked the foot cannot be caught; but the question whether a guard rail not properly blocked is dangerous was not proper, being one of the ultimate questions for the jury.

APPEAL from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Reversed.*

This is an action brought by the administrator of the estate of Adelbert Strader, a young man twenty years of age, who was killed in the defendant's railway yard at West Superior by being run over by two freight cars, while he was at work as a switchman in said yard.

It appeared by the evidence on the trial that the railway yard in which the accident happened was about a mile and a half long, and contained nearly, or quite, thirty miles of

switch tracks.    There were numerous frogs among the tracks.    It seems that there is what is called a "guard rail" at each frog.    This guard rail is spiked down alongside of the main rail, directly opposite the point of the frog, and it flares somewhat at each end, so as to guide the flange of the wheel close against the main rail; the object of it being to prevent the wheel from taking the wrong point of the frog. This rail, generally, is about sixteen feet in length, the flaring part of the guard rail is about three feet long at each end, and the remainder of the guard rail is straight and runs parallel with the main rail and about two inches distant from it.    The danger which the employees in the yard incur of having their feet caught between the flaring part of the guard rail and the main rail, and not being able to extricate them, has induced railway companies generally to put in what is called "blocking" between the flaring part of the guard rail and the main rail.    This blocking consists of two-inch lumber, cut in wedge-like shape, about three feet long, which is placed on the ties between the rails, from where the guard rail commences to flare to where the rails come nearest together; the object being to prevent the employees from having their feet caught.

It is claimed by the plaintiff that the blocking at a certain guard rail in the yard was defective and insufficient, and that the foot of the plaintiff's intestate was caught between the rails by reason of such defective blocking, whereby he was held until the cars ran over and killed him.    There was little dispute in the evidence as to the facts of the accident.    The accident happened between 3 and 4 o'clock in the morning, on the morning of June 20, 1892, after it had become light. The plaintiff's intestate was one of a switching crew which was engaged in distributing cars from a train in the aforesaid yards.    The crew was composed of the engineer and fireman of the switch engine, the foreman of the switching crew, and two switchmen,— one being the intestate, and one

being a witness named Parker. Strader had been employed in the yards as a switchman some nine or ten months previous to the accident, but during the last month of his employment he was only there occasionally as an extra man, and his employment seems to have been at night. On the night of the accident, Strader was acting as fielder of the switching crew. The testimony shows that the duty of a fielder is to take care of the cars that are cut off by the man who is in charge of the crew, to ride them in onto the tracks which they are intended for, to set brakes upon them, and to couple them up if there are cars to couple them to, and to ride the hind end of a string of cars that the engine may be pulling. The witness Parker testifies: "It is the fielder's duty, when cars are kicked, to couple them onto other cars, if they run far enough. If they come together, he is to couple them; that is his business. If he wants to he can walk, and if he wants to he can get on the ladder on the outside and ride down." Another witness testifies that when cars are in motion, and the fielder is not near the stationary cars which the moving cars are approaching, he will ride a moving car up near to the coupling point. He must be there at the coupling point ahead of the car, and he quite frequently leads the car; he follows ahead, with the car behind him.

Just prior to the accident, the switch engine had kicked two cars onto another track, and the cars were moving at the rate of about six miles per hour, approaching the frog of the track upon which they were expected to stand. The cars were going directly south, and about 100 feet, or a little more, south of the frog a stationary car was standing. It was the duty of Strader, as fielder, to take care of these cars, and as they approached the frog and guard rail immediately opposite he approached the track from the west, a little ahead of the moving cars. As he approached the moving cars he became hid from the sight of the remainder of

the crew, but when the cars passed over the frog and guard
rail it was discovered that Strader had been run over and
practically cut in two. His right foot was between the
main rail and the guard rail at a place perhaps a foot south
of the flaring portion of the guard rail at the north end, his
right leg was largely crushed down between the two rails,
his head and shoulders were outside of the main rail, and
his face towards the ground.

There was testimony to show that the device of blocking
was in general use by all railway companies. There was
also testimony that the block in the flaring place close to
where Strader's foot was found was worn out and slivered,
so that it came in two by wear, and that it was only a frag-
ment.

A nonsuit was granted upon defendant's motion, and the
plaintiff appealed.

For the appellant there was a brief by *Simpson & Lang*
and *F. H. Remington,* and oral argument by *J. G. Simpson.*
They argued, among other things, that the plaintiff having
shown a defective track and an accident resulting therefrom,
it was for the defendant to show not only that an inspec-
tion had been made, but a proper inspection and by a proper
person and within a reasonable time before the accident.
Whether this duty had been performed was a question for
the jury. *Durkin v. Sharp,* 88 N. Y. 227; Shearm. & Redf.
Neg. § 223; Wharton, Neg. §§ 210, 211; *Solomon R. Co. v.
Jones,* 30 Kan. 607; *Hannibal & St. J. R. Co. v. Fox,* 31 id.
586; *Fink v. Des Moines I. Co.* 84 Iowa, 325; *Henry v. S. C.
& P. R. Co.* 75 id. 86; *Bailey v. R., W. & O. R. Co.* 139
N. Y. 304; *Rockwell v. Third Ave. R. Co.* 64 Barb. 448;
*Barton v. Syracuse,* 37 id. 300; *Coontz v. M. P. R. Co.* 121
Mo. 659; *Savanna, F. & W. R. Co. v. Day,* 91 Ga. 678;
*Wallace v. C. V. R. Co.* 138 N. Y. 302; *Huddleston v. Lowell
M. Shop,* 106 Mass. 284; *Worster v. Forty-second St. & G. S.
F. R. Co.* 50 N. Y. 203; *Union P. R. Co. v. Daniels,* 152

Paine vs. Eastern R. Co. of Minnesota.

U. S. 685; *Daniels v. U. P. R. Co.* 6 Utah, 357; *Hough v. Railway Co.* 100 U. S. 218; *Baltimore & O. R. Co. v. Baugh*, 149 id. 368; *Sweat v. B. & A. R. Co.* 156 Mass. 285; *Brann v. C., R. I. & P. R. Co.* 53 Iowa, 595; *Houston v. Brush*, 66 Vt. 331; *Tuttle v. C., R. I. & P. R. Co.* 48 Iowa, 236; *Norton v. D., B. C. & A. R. Co.* 81 Mich. 423; *Griffin v. B. & A. R. Co.* 148 Mass. 147; *Scott v. L. & St. K. D. Co.* 3 Hurl. & C. 596; *Moon v. N. P. R. Co.* 46 Minn. 106; *Cowan v. C., M. & St. P. R. Co.* 80 Wis. 287; *Wedgwood v. C. & N. W. R. Co.* 44 id. 44; *McClarney v. C., M. & St. P. R. Co.* 80 id. 277; *Ford v. Fitchburg R. Co.* 110 Mass. 240; *Noyes v. Smith*, 28 Vt. 59; *Wright v. N. Y. C. R. Co.* 25 N. Y. 566; *Corcoran v. Holbrook*, 59 id. 517; *Strahlendorf v. Rosenthal*, 30 Wis. 674; *Bass v. C. & N. W. R. Co.* 36 id. 463; *Brabbits v. C. & N. W. R. Co.* 38 id. 289. Actual notice of the defective condition was not necessary. *Turner v. B. & M. R. Co.* 158 Mass. 265; *Alcorn v. C. & A. R. Co.* 14 S. W. Rep. 943; 2 Thomp. Neg. 994, 996; *Ocean S. S. Co. v. Matthews*, 86 Ga. 422; *Porter v. H. & St. J. R. Co.* 71 Mo. 78, 79. See, also, Bailey, Master's Liability, 101; Buswell, Personal Injuries, § 195; Wood, Master & S. §§ 346–348; Shearm. & Redf. Neg. §§ 194, 223; *Hamilton v. Rich Hill C. M. Co.* 108 Mo. 346; *Goodsell v. Taylor*, 41 Minn. 207.

For the respondent there was a brief by *John A. Murphy* and *C. Wellington*, and oral argument by *Mr. Murphy*. To the point it was incumbent upon the plaintiff to show either that defendant had actual notice or that the defect had existed for such a length of time that it ought to have known it, they cited *Case v. C., R. I. & P. R. Co.* 64 Iowa, 762; *Losee v. Buchanan*, 56 N. Y. 476; *Garrison v. New York*, 5 Bosw. 497; *Hall v. Manchester*, 40 N. H. 410; *Hart v. Brooklyn*, 36 Barb. 226; *Griffith v. B., C. R. & N. R. Co.* 72 Iowa, 645.

WINSLOW, J.   We think the case is one which should have been submitted to the jury.  The circuit judge, in nonsuiting the plaintiff, said substantially that if the plaintiff's claim was that the blocking was originally defective, then the court would be bound to hold that the deceased assumed the risk; if, on the other hand, the claim was that the blocking was sufficient originally, but had fallen out of repair, then there was a failure of proof to show that the defendant had actual notice of the defect, or that it had existed for such length of time that the defendant ought to have known it.  As to the first branch of the proposition, it seems to have been based on evidence tending to show that all the blocking used in the yard at the many guard rails was uniform in its construction, as originally put in.  If this appeared without dispute, it would seem that the deceased should, during his nine or ten months of service, have seen and known the danger, and appreciated the risk, if there was any, and that the conclusion of the circuit judge on this point was correct.  If, on the other hand, the fact should be established that only this *particular* block was defective in construction, the deceased could not, as matter of law, be charged with assumption of the risk.  *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273.

Nor can it be held that, if the blocking became defective through wear, there must be proof of actual notice to the company of its condition, in order to create a duty to repair the defect or renew the blocking.  The company owes a greater duty to its employees than that of mere repair after receiving notice of a defect.  It owes them the duty of careful and vigilant inspection to discover and remedy such defect.  The duties of its yard employees are in a high degree dangerous.  They assume the dangers reasonably incident to their occupations, but not the dangers resulting from failure to reasonably perform the duty of inspection and repair of roadbed and apparatus.  When the plaintiff had introduced

evidence tending to show that the blocking in question had become defective by wear, so as to be no longer efficient to obviate the danger of catching the foot of the employee, he showed enough to take to the jury the question as to whether the defendant had performed its duty of inspection and repair of its tracks. Were the testimony such as to show a sudden break from a hidden defect, the question would be different; but here, the evidence being that the defect was the result of gradual wear, the reasonable inference is that the defect had existed for some time, and it was for the jury to say whether the defendant company was negligent in not inspecting its track and discovering and remedying the defect before the accident.

It is claimed that there is no evidence in the case from which it can be inferred that the death of Strader was in any way the result of any defect in the blocking. We cannot agree with this claim. The presumption is that the deceased did not deliberately place himself upon the track. His foot was between the two rails a few inches south of the V-shaped opening between the guard rail and the main rail, where it might very naturally be in case it had been accidentally caught at the flaring opening and had been pulled southward as the result of the struggles of the deceased to get away from the approaching car. What the deceased was doing at the moment when his foot was caught, if it was caught, we know not. It does not follow that he was negligent because he was in front of the car. He had a right to ride the car. Perhaps he was attempting to get on. Perhaps, on the other hand, he was about to lead the car, and was preparing the coupling link or pin for coupling it onto the stationary cars. Negligence cannot be assumed by the court solely from the fact that he was in front of the car, because his duties were there, or at least may have been there. It is not the case of a passenger or foot traveler who goes in front of a moving train.

Our conclusion is that there is sufficient evidence to send to the jury the question whether the accident was caused by the defective blocking, and that the court is not justified in saying, as matter of law, that the deceased was guilty of contributory negligence from the fact that he was in front of the moving car.

The plaintiff attempted to prove by witnesses familiar with the blocking used in the defendant's yard that, as the guard rails were usually blocked in that yard, it was impossible for the foot to be caught. The object was to show that this particular block in question was out of repair. Objections to these questions were sustained, and exception was taken. We think the evidence should have been allowed. If such was the fact, it was undoubtedly proper to be proved, as bearing upon the question whether the deceased assumed the risk. We think, also, it was proper to show by railroad men that, if guard rails are properly blocked, the foot could not be caught. The question whether a guard rail not properly blocked is dangerous is not a proper question. This is one of the ultimate questions for the jury to decide, after being put in possession of all the facts. It is not a question for a witness.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

MARSHALL, J., took no part.