HENNESEY, Administratrix, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*March 5 — March 22, 1898.*

*Assumption of risk: Contributory negligence: Court and jury: Railroad company, liability of: Instructions.*

1. For a railroad company to leave a ditch, ten inches wide and eight inches deep, beneath its track in its yard, open at the side of its track at a place where switchmen would naturally walk in the discharge of their duties, such ditch being constructed partly to allow free play to the switch rod and partly to drain the yard, does not, as a matter of law, constitute negligence on its part; but whether it did so or not, in a particular case, is a question for the jury upon the evidence.

2. Where, in an action against a railroad company for the death of a switchman who had worked for some time in and was familiar with its yard, caused by his falling into an open ditch located under its track between two ties and extending outside the track, while walking between and attempting to uncouple cars, there was evidence showing that the ditch in question was substantially different from the openings at the other switches and the danger to be apprehended was greater in degree as well as different in character, *held*, that it could not be said as a matter of law that he assumed the risk. MARSHALL, J., dissents.

3. It is not, as a matter of law, contributory negligence for a switchman to walk between cars which are moving slowly, for the purpose of uncoupling such cars, in a railroad yard where that method has been universal and has been practiced for a long time with the knowledge and approval of the yardmaster, and there was no rule or regulation to the contrary.

4. Where, in an action against a railroad company for the death of a switchman caused by his stepping into a ditch in its yard, al-

though the general question of contributory negligence was sub-mitted, yet the jury were not instructed that an assumption of risk was a species of contributory negligence, and that if the de-ceased assumed the risk of unusual danger he was, in law, guilty of contributory negligence, the question whether a person of ordi-nary intelligence, with the experience of the deceased, in the ex-ercise of ordinary care, should have observed the condition of the track before the day of the injury, and so have known the danger, should, on request, have been submitted to the jury as a separate question. MARSHALL, J., dissents.

5. In such an action, where no one saw the injury and the circum-stances in evidence might well lead to different inferences in the minds of reasonable men, the question whether the death was the result of an unaccountable accident should, on request, have been submitted to the jury.

6. An instruction defining ordinary care as "such care as the ordi-nary person uses in the transaction of the ordinary affairs of life" is certainly inaccurate, if not positively erroneous.

APPEAL from a judgment of the superior court of Milwau-kee county: GEO. E. SUTHERLAND, Judge. *Reversed.*

The plaintiff is the widow and administratrix of one James Hennesey, deceased, who was killed March 19, 1895, in the yards of the defendant in Milwaukee, and she brings this action to recover damages for his death. The ground of liability claimed is that the deceased, while performing his duties, caught his foot in an open ditch negligently main-tained in the yard, and was consequently killed.

The evidence showed that the defendant has three yards at Milwaukee, one near the passenger station on the north side of the river, one at or near National avenue on the south side of the river, and the third one in the south part of the city, called the "farm yard," where empty cars are stored. Each of the yards contains a large number of switches, the "farm yard" having about fifty, and the two other yards having about the same number each. The deceased was fore-man of the switching crew, and worked in all of the yards, as his duties required, sometimes going to the "farm yard" several times a day, and sometimes not at all during the day.

On the day of his death he went with a switch engine and switching crew to the "farm yard" to obtain some grain cars for the St. Paul Railway. The tracks in the "farm yard" run practically north and south. They entered the "farm yard" from the north, with the engine headed south. Hennesey was directing the work on the ground, and actively assisting in coupling and uncoupling the cars and directing the engine. The engine pulled a long string of freight cars from a switch track towards the north, onto the main lead track, and Hennesey was directing the cutting off of certain cars from the south end of the string, and setting them on switch tracks. He had made two cuts, doing the uncoupling himself, and he then signaled the engineer to go ahead across the same switch which he had just used, for the purpose of preparing to cut off two more cars. The engine pulled north over the switch, which was a split switch, and, when it had passed the switch sufficiently, Hennesey threw the switch, and gave the signal to go south again, for the purpose of cutting off the two south cars. As the cars began to move towards the south, Hennesey walked north, and met the cars north of the switch, and stepped in between the second and third cars, and walked along between the second and third cars, but with his feet outside of the track, and apparently attempted to pull the pin between the cars as he passed over the point of the switch. No one saw him alive after this, nor witnessed the accident. At this point of the switch, the switch rod passes under the tracks connecting the two rails; and under this rod there is a ditch between two ties about eight inches in depth, below the track, and ten inches in width, the purpose of which ditch is partly to allow free and unobstructed play of the switch rod, and partly to allow water to drain away across the yard, from west to east. The facts show that something serious happened to Hennesey at this point. The pin was not pulled, although it was found to be loose in the socket.

The forward wheels of the third car, for some unexplained reason, left the track to the east, and the brakeman at the head of the train, discovering some difficulty, signaled the engineer to stop, which he did within about twelve feet. The body of Hennesey was then found west of the tracks, on the ground, with his breastbone and back crushed in, as if caught between two unyielding bodies, but with no other injuries. He never spoke, and died within a few minutes. A part of the skirt of his coat was cut off on the track at the ditch, and his footprints ceased there. There was also, apparently, the track of a foot in the bottom of the ditch, just outside of the rail, and the appearance upon the ground south of the ditch and outside of the rail, as if a body had been shoved along. His left shoe was partially off, the heel being out of the shoe, and a marked dent or depression on the back of the shoe just above the heel. The theory of the plaintiff was that he accidentally slipped in this drain with his left foot, and caught his foot, and was thrown down and crushed under the projecting oil box of the following car.

At the close of the evidence, a motion was made by the defendant to direct a verdict for the defendant, on three grounds: (1) Because no negligence was proven on the part of the defendant; (2) because the plaintiff assumed the risk; and (3) because the evidence shows contributory negligence. The motion was denied, and a special verdict ordered and rendered as follows: "(1) Was James Hennesey injured while discharging his usual duties in the customary manner? Yes. (2) Was the switch and roadbed at the place of the accident constructed in the way such switches and roadbeds are usually constructed under like circumstances by persons of ordinary care and experience in like business? No. (3) Was the switch and roadbed defectively constructed? Yes. (4) If you answer the third question 'Yes,' then was the injury to James Hennesey proximately caused by such

defect? Yes. (5) If you answer the third question 'Yes,' then had such defect existed long enough for the defendant, with the use of ordinary diligence, to have known and remedied such defect? Yes. (6) If you answer the third question 'Yes,' then ought the defendant to have reasonably expected that such an injury as the one in question might probably occur as a result of not remedying such defect? Yes. (7) Was the defendant guilty of any want of ordinary care which proximately caused or contributed to the injury to James Hennesey? Yes. (8) Was James Hennesey guilty of any want of ordinary care which proximately caused or contributed to his injury? No. (9) What pecuniary loss has the widow of James Hennesey sustained by reason of his death? Five thousand dollars ($5,000)."

Upon this verdict a judgment for the plaintiff was rendered, and the defendant appeals.

For the appellant there was a brief by *Fish & Cary*, and oral argument by *R. N. McMynn*. They argued, among other things, that, in order to recover in this case, the plaintiff was bound to prove that the defendant did not exercise ordinary care to furnish to plaintiff's decedent a reasonably safe working place, judged by the standard of similar appliances furnished by other persons engaged in like business under like circumstances. *Guinard v. Knapp-Stout & Co. Company*, 95 Wis. 482, 485–487; *Louisville & N. R. Co. v. Johnson*, 81 Fed. Rep. 679. She was also bound to show to a reasonable certainty that the injury complained of resulted from the negligence charged in the complaint, as the proximate cause. *Morrison v. Phillips & C. Const. Co.* 44 Wis. 405, 411; *Steffen v. C. & N. W. R. Co.* 46 id. 259, 265; *Gores v. Graff*, 77 id. 174; *Peterson v. Sherry L. Co.* 90 id. 83; *Ellison v. Truesdale*, 49 Minn. 240; *Wormell v. M. C. R. Co.* 79 Me. 397; *Barrett v. Smith*, 14 N. Y. Supp. 307; *Searles v. Manhattan R. Co.* 101 N. Y. 661; *Malone v. B. & A. R. Co.* 51 Hun, 532; *Taylor v. Yonkers*, 105 N. Y. 202. These

facts she has failed to show. The deceased, by accepting and continuing in the employment, the conditions of which were open and obvious, assumed the risks. *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 664; *Stephenson v. Duncan,* 73 id. 404; *Sweet v. Ohio Coal Co.* 78 id. 127, 130; *Corcoran v. Milwaukee G. L. Co.* 81 id. 191; *Herold v. Pfister,* 92 id. 417, 421; *Erdman v. Ill. Steel Co.* 95 id. 6, 11; *De Forest v. Jewett,* 88 N. Y. 264.

*E. M. McVicker* and *W. J. Turner,* for the respondent, contended, *inter alia,* that the question was fairly submitted to the jury, and they found that the switch, drain, and roadbed where the injury to plaintiff's decedent occurred were not constructed in the ordinary manner, but were defective, and the evidence supports the finding. *Borden v. Daisy Roller Mill Co.* 98 Wis. 407; *Powell v. Ashland I. & S. Co.* id. 35. *Assumption* of risk is not established by mere proof of facts upon which a presumption of knowledge may be formed. It should rest upon positive knowledge. *Jensen v. Hudson S. M. Co.* 98 Wis. 73; *Dorsey v. Phillips & C. Const. Co.* 42 id. 583; *Kennedy v. L. S. T. & T. R. Co.* 93 id. 32; *Paine v. Eastern R. Co.* 91 id. 340; *Snow v. Housatonic R. Co.* 8 Allen, 441; *Hannah v. Conn. R. R. Co.* 154 Mass. 532; *Plank v. N. Y. C. & H. R. R. Co.* 60 N. Y. 607; *Ill. Cent. R. Co. v. Sanders,* 166 Ill. 270; *McDougall v. Ashland Sulphite-Fibre Co.* 97 Wis. 382. An employee does not assume risks of those dangers which are known to and can be obviated or avoided by the employer by the exercise of reasonable care and caution. *Curtis v. C. & N. W. R. Co.* 95 Wis. 468; *Promer v. M., L. S. & W. R. Co.* 90 id. 220; *Colf v. C., St. P., M. & O. R. Co.* 87 id. 276.

WINSLOW, J. The defendant claims here, as it claimed below, that no case was made by the plaintiff, because (1) the evidence showed no negligence on its part; (2) the plaintiff's intestate assumed the risk; and (3) because he was guilty of contributory negligence.

We are unable to say, as matter of law, that a verdict should have been directed upon either of these grounds. The evidence was entirely sufficient to take to the jury the question whether leaving an open ditch in a railroad yard of the width and depth of the one in question, under and at the side of the track where switchmen would naturally walk, was not an act of negligence. The evidence was ample that such ditches did not exist in the yards of other companies, or even in the other Milwaukee yards of the same company.

The question of assumption of risk is one of greater difficulty. The ditch had existed in the same condition for a long time, and the intestate was familiar with the yard. There was evidence that all or nearly all of the switch rods in the farm yard had openings or ditches under them of the same general character as the opening in question, for the purpose of giving free play to the switch rod; but there was also positive evidence by at least one witness acquainted with the yard that the openings under the other switch rods were much shallower than the one in question. And a number of witnesses who testified to the existence of similar openings at the other switches admitted that the other openings were simply intended to allow free play to the switch rod, while the opening in question constituted a part of a continuous ditch passing for a long distance transversely under several tracks for the purpose of draining the yard. The evidence also clearly showed that, in the two other yards of the company where the deceased spent the greater part of his time, there were no such ditches, but that all such drains were covered. If the accident to the plaintiff's intestate was in fact caused by his stepping into the ditch and his foot becoming wedged in between the ties, as the condition of his foot and shoe when found may perhaps indicate, it is very evident that the depth of the ditch was one important and efficient element in working the mischief. A ditch two or

three inches deep would probably present no such possibility, or at least only in a comparatively slight degree.  Had it been clear and undisputed that all the switches in the yard had similar deep ditches under them, it might with reason be claimed that a man who had worked for any considerable time in the yard would be held, as matter of law, to have assumed the risk.  *Paine v. Eastern R. Co.* 91 Wis. 340. But there being evidence tending to show that the ditch in question was substantially different from the openings at the other switches, and the danger to be apprehended greater in degree as well as different in character, it cannot be said, as matter of law, that the intestate assumed the risk because he had not seen and appreciated the special danger at this one switch.  *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273; *Paine v. Eastern R. Co., supra; Curtis v. C. & N. W. R. Co.* 95 Wis. 460.

Nor can it be held, as matter of law, that the deceased was guilty of contributory negligence because he attempted to uncouple the cars while they were slowly moving.  There was evidence that this method of uncoupling was well-nigh universal in the yards of the company at Milwaukee, and that it had been practiced with the knowledge and tacit approval of the yardmaster for years; and no rule or regulation was shown to the contrary.  So, under familiar principles, the question became one for the jury.  *Curtis v. C. & N. W. R. Co., supra.*

There were, however, two questions which the defendant requested should be incorporated in the special verdict, which were denied, and which, we think, should have been submitted in some form.  These questions were as follows: (1) "Ought a person of ordinary intelligence, with the experience of deceased, in the exercise of ordinary care, to have observed the condition of the roadbed, switch, and track at the place in question, prior to the day of his injury, and to have known the danger to be apprehended there-

Hennesey vs. Chicago & Northwestern R. Co.

from?" (2) "Was the death in question the result of an unaccountable accident?"

The first of these interrogatories presents the question of assumption of risk, which was one of the most vital questions in the case. It is true that it has been held by this and other courts, and logically, we think, that assumption of the risk of unusual danger is a form of contributory negligence. *Darcey v. Farmers' Lumber Co.* 87 Wis. 245. It is true, also, that the general question of contributory negligence was submitted to the jury in question 8 of the special verdict. Now, had the jury been carefully instructed upon the question of assumption of risk, and plainly told that it was a species of contributory negligence, and that, if they found that deceased did assume the risk of such unusual danger, then he was in law guilty of want of ordinary care, and the question must be so answered, there would probably be no error in refusing to submit the specific question asked for, because the issue would thus have been covered. But there were no such satisfactory and clear instructions on this point as to place the jury in position to appreciate that, in answering the question, they were also passing upon the question of assumption of risk. While, as before said, assumption of unusual risk is a form of contributory negligence, it is a specific phase of such negligence, and is not likely to be so considered by a jury without careful and specific instructions. If not so covered, it should in a case like the present be submitted in a separate question.

The second question asked and refused was whether the injury was the result of a pure accident. This is a case where that question should have been submitted. No one saw the injury, and the circumstances in evidence may well lead to different inferences in the minds of reasonable men. It may well be that, if this question had been submitted with proper instructions, the jury would have answered it in the affirmative; and, had such been the answer, we are unable to see

how the verdict could be disturbed. *Kucera v. Merrill Lumber Co.* 91 Wis. 637.

There were also errors in the charge which should be corrected upon a new trial. The jury were told that proximate cause means " the direct and immediate cause." This subject has been so frequently and recently reviewed by this court that it is unnecessary to go over it again. The true rule will be found stated in numerous recent cases. The definition of ordinary care as " such care as the ordinary person uses in the transaction of the ordinary affairs of life " is certainly inaccurate, if not positively erroneous. *Duthie v. Washburn*, 87 Wis. 231.

Other errors are assigned, but we do not deem it necessary to discuss them.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

MARSHALL, J. I concur in the decision reversing the judgment of the court below, but not in all that is said in the opinion. In order that my position may appear when the question shall be hereafter presented, I file a separate opinion.

It is the established doctrine of this court that assumption of risk is a form of contributory negligence, and therefore included within that general term. Such was the decision most distinctly made in *Powell v. Ashland I. & S. Co.* 98 Wis. 35, citing several previous decisions on the subject, to which others might be added. As there said, no distinction in fact exists between contributory negligence and assumption of risk, and those authorities that make one only tend to confusion and uncertainty in a most important branch of the law. That is not the announcement of any new doctrine. It merely states more distinctly, perhaps, than heretofore, what has been repeatedly decided, and is in accordance with the most reputable of the older text writers.

Speaking of the situation of master and servant where the former subjects the latter to more than ordinary risks, and the latter accepts service with the added danger, in *Hazen v. West Superior Lumber Co.* 91 Wis. 208, it was said, in substance: Where a defect or unusual danger is open and obvious, although the employer may be said to be guilty of negligence in keeping his premises in that condition, the *employee is also guilty of negligence in accepting service and continuing in it under the circumstances.* In the second American edition of Smith's work on Negligence, at pages 494, 495, the text on the subject of the relations of the parties where there is assumption of risk, is, in substance, as follows: There is a contract of mutual consent on both sides, to accept the existing state of things. The master is said to be guilty of negligence in keeping his machinery in a dangerous state, and *the servant is guilty of negligence in accepting service,* or in his acts, as the case may be. Although the master may prevent the danger by ordinary care, still he is not bound to do so by reason of the consent of the servant to the existing state of things, and therefore the servant's negligence is equivalent to contributory negligence. How reasonable this doctrine is, when viewed in the light of that fundamental principle of the law of negligence, that it consists in a departure from the standard of ordinary care, as applied to the conduct of any one in the performance of duty to himself or another, as respects personal safety. The fact that the departure is a matter of contract does not militate at all against its being negligence,— the invariable test being whether the conduct is consistent with ordinary care. A person may contract to do work under conditions more than ordinarily dangerous, and therefore have no right to recover for injuries sustained by reason thereof; nevertheless, the voluntary submission to the dangerous situation is negligence, and, if injury results, is contributory negligence.

It follows necessarily that the general question of whether there was want of ordinary care on the part of the plaintiff, which contributed to his injury, covered the whole field of efficient contributory negligence. Therefore, if the charge was not broad enough to properly explain the question, the error was in the faulty character of the charge and not in failure to submit an independent question. This court has very frequently held that mere failure to fully instruct on a question of law is not reversible error, unless a more full and explicit instruction on the subject is requested and refused. To hold otherwise in this case, to my mind, is to recognize a distinction between contributory negligence and assumption of risk, while we say, in fact, the former includes the latter, thereby promoting the very confusion which it should be the constant aim of courts to prevent, to the end that remedies in this very important class of cases, which occupies a great part of the attention of courts, may be administered with the greatest practicable economy and certainty.

My brethren say, had it been clear and undisputed that all the switches in the yard had small deep ditches in them, that it might with reason be claimed that a man who had worked for any reasonable time in the yard would be held, as a matter of law, to have assumed the risk. That observation is quite right, inasmuch as in *Paine v. Eastern R. Co.* 91 Wis. 340, and many other cases that might be cited, this court so distinctly held, though there are cases that may be read to support a contrary doctrine, and that assumption of risk does not appear from evidence, as a matter of law, unless it shows conclusively that the *precise risk was actually known* and appreciated. Cases that may be so read are exceptional, and, it may be safely said, were not intended to go that far, though it must be admitted that the use of language to the effect that evidence does not conclusively establish contributory negligence unless it shows that the

injured party knew and appreciated the precise danger, as
in *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583, is liable
to be so construed. There are repeated decisions of this
court, that if a person either knows, or by reasonable at-
tention to his surroundings would know, the dangers, he is
remediless for any injury received therefrom, and that the
term, " appreciate the risk," has no proper application to a
person of mature years and ordinary intelligence and ex-
perience, for such person is bound to both know and appre-
ciate such risks. Said Mr. Justice PINNEY, speaking for the
court in *Hazen v. West Superior Lumber Co.* 91 Wis. 208:
" Where a defect or danger is open and obvious, although
it exists in consequence of the negligence of the employer,
still, knowledge of it on the part of the employee of mature
years will be presumed." Cases in respect to minors or in-
experienced persons are inapplicable to such situations. So
in *Peterson v. Sherry Lumber Co.* 90 Wis. 83, in an opinion
sustaining a direction of a verdict for the defendant on the
ground of assumption of risk, the court said, in effect, that
a person of mature years and experience in his work is pre-
sumed to know and appreciate all dangers obvious to a per-
son of ordinary intelligence and prudence under the circum-
stances. To the same effect are *Jones v. Sutherland,* 91 Wis.
587; *Sweet v. Ohio Coal Co.* 78 Wis. 127; *Stephenson v. Dun-
can,* 73 Wis. 404, and many other cases that might be cited.

From the foregoing I cannot concur in that part of the
opinion to the effect that it was a question for the jury
whether the deceased knew and appreciated the danger.
The deceased had worked for months where his duties re-
quired him to be frequently, every day, in the yard. He
was one of the most experienced men in the switching crew,
as he was the foreman of it. Therefore, within the rule
above discussed, in my judgment, as a matter of law, he was
bound to know and appreciate the dangers to which he was
subjected by reason of the manner in which the switches

Hennesey vs. Chicago & Northwestern R. Co.

were placed. To apply the rule to such cases, applicable to minors and inexperienced men, by submitting the case to the jury to find whether the injured person appreciated the risk, seems to violate a firmly established principle of law. The supreme court of the United States, in *Southern Pacific R. Co. v. Seley*, 152 U. S. 145, very recently dealt with this precise question. The injured person was not regularly employed as a brakeman or switchman, and in that respect the instant case is much stronger for the application of the rule under discussion. He had been in the employ of the railway company for some time, and had frequently been in the railway yard where he was injured, whereby he had opportunity to see that the frogs of the switches were all unblocked, in one of which, while attempting to make a coupling, his foot was caught and he was thereby injured. The court held that it must be assumed that he knew the condition of the frog, and assumed the risk incident to working in the railroad yard in that condition.

From the foregoing it is quite clear to my mind that the evidence, even as understood by my brethren, shows conclusively that the deceased assumed the risk of the depression in the ground at the switch, which it is claimed was the cause of his death. The danger was not concealed in any way. He must have seen it if he exercised the slightest attention to his surroundings. On the subject of whether the open switch ditch was in use universally in the yard, as I read the evidence, it is without any substantial conflict, bringing the case clearly within *Paine v. Eastern R. Co.* 91 Wis. 340.

It follows that while I concur with the reversal, I dissent from the criticism upon the refusal of the trial court to submit a special question on the subject of assumption of risk, and from the decision that the question of contributory negligence was for the jury. I think the verdict should have been directed for the defendant.

It may be said that the rule, that assumption of risk is a defense to the master's negligence, is a harsh one, but if so, it being the settled law, courts cannot properly bend it one way or the other to meet the special hardships of particular situations. That in cases of this kind there is sometimes that refinement of reasoning and tendency to distinguish, liable to lead to the belief that the legal principles involved are so elastic as to be quite indefinite and uncertain, instead of well defined and rigidly applied, is not without some support, however careful courts may be to avoid it. But the fact remains that while the circumstances of cases must necessarily be different, a principle of law must govern all alike that come within it. That is recognized by all, but *all* do not understand the facts of particular cases alike; so, while working with the same end in view, all do not always reach a common judicial result.