Rush v. The Coal Bluff Mining Company.

Judgment affirmed.

McBRIDE, J., did not take part in the decision of this case.

Filed April 7, 1892.

———————◆———————

No. 15,651.

RUSH v. THE COAL BLUFF MINING COMPANY.

| 131 | 135 |
|-----|-----|
| 146 | 153 |
| 131 | 135 |
| 148 | 63 |
| 152 | 597 |
| 131 | 135 |
| d162 | 122 |
| 131 | 135 |
| 165 | 112 |
| 131 | 135 |
| 170 | 15 |

NEGLIGENCE.—*Directing Verdict for Defendant.—When Should not be Done.*—The court should not direct a verdict for the defendant, in an action to recover damages on account of the negligence of the plaintiff, if the evidence is such that a fair inference may be drawn from it that the defendant was guilty of negligence producing the injury, and that the plaintiff was not guilty of negligence which contributed to such injury.

SAME.—*When Court may Direct Verdict for Defendant.*—If from the evidence no reasonable inference of negligence on the part of the defendant causing the injury can be drawn, or there is but one reasonable inference to the effect that the plaintiff's negligence contributed to the injury, then it is the duty of the court, on request, to direct the jury to return a verdict in favor of the defendant.

SAME.—*Inference to be Drawn from Evidence.—Directing Verdict.*—If the evidence is such that impartial men may differ as to the conclusion to be drawn from it, the court must submit the question of negligence to the jury; but if there is no evidence supporting any particular fact or theory of the case and authorizing a reasonable inference of such fact

or theory essential to a recovery or sufficient to create a reasonable difference of opinion, in the minds of impartial men sitting in judgment on the case, then it is the duty of the court to direct the jury to return a verdict against the party having the burden of establishing the material facts essential to a recovery.

SAME.—*Mine.—Injury in Shaft of.*—For a case where the defendant is not liable for an injury inflicted by a descending cage, in the shaft of a mine, see opinion.

From the Vigo Circuit Court.

*S. R. Hamill, G. W. Faris, I. N. Pierce, P. M. Foley* and *J. Foley,* for appellant.

*L. D. Thomas, J. G. McNutt* and *F. A. McNutt,* for appellee.

OLDS, J.—This was an action brought by the appellant against the appellee for damages resulting from an injury sustained by the appellant while working in the coal mine of the appellee. The injury is alleged to have been caused by the negligence of the appellee, and through no fault or negligence of the appellant. Issues were joined, and, after the appellant had introduced his evidence and rested his case, on motion of the appellee the court instructed the jury to return a verdict for the appellee, and in pursuance of such instruction the jury returned a verdict in favor of the appellee. The appellant filed a motion for a new trial, which was overruled and exceptions reserved, and error assigned on this ruling. The action of the court in instructing the jury to return a verdict in favor of the appellee presents the only question in the case.

The taking of a case from the jury, or instructing them to return a verdict in favor of the plaintiff, is a power vested in a court which should, in a proper case, be exercised, but great caution should be used in exercising this power, and it should not be done where different conclusions might fairly be reached from the evidence. In such a case as the one at bar a jury ought not to be instructed to return a verdict for the defendant if the evidence is such that a fair

inference may be drawn from the evidence adduced that the defendant was guilty of negligence producing the injury, and that the plaintiff was not guilty of any negligence which contributed to the injury. The two elements are necessary to a recovery by the plaintiff, and if the evidence is of such a character as no reasonable inference of negligence on the part of the defendant causing the injury can be drawn from it, or as to warrant but one reasonable inference in regard to the negligence of the plaintiff, and that he was guilty of negligence which contributed to the injury, then it is the duty of the court, on request, to instruct the jury to return a verdict in favor of the defendant. Under such circumstances further continuances of the cause and a prolongation of the controversy, with a possibility of a verdict being returned in favor of the plaintiff which could not be sustained by the evidence, are useless.

It is the province of the jury to weigh evidence where there is evidence from which two conclusions may reasonably be drawn, but it is the province of the court to determine whether or not there is or is not evidence supporting any particular fact or theory of a case, and if there is no evidence authorizing a reasonable inference of such fact or theory essential to a recovery or sufficient to create a reasonable difference of opinion in the minds of impartial men sitting in judgment on the case, then it is the duty of the court to instruct the jury to return a verdict against the party having the burden of establishing such material facts essential to a recovery. If, however, the evidence is such as that impartial men may differ as to the conclusion to be drawn from the evidence, then the court must submit the question to the jury. Such we believe to be the well-established rule of the law.

Jurors can not, without evidence reasonably authorizing an inference of negligence, arbitrarily declare there was negligence. Neither can they, in the face of undisputed facts showing conclusively that a party was guilty of negligence

contributing to an injury, declare that he was free from contributory negligence.    *Wabash, etc., R. W. Co.* v. *Locke,* 112 Ind. 404, and authorities there cited; *McClaren* v. *Indianapolis, etc., R. R. Co.,* 83 Ind. 319.

In the Work of the Advocate the rule is stated by Judge Elliott as follows: " The rule generally adopted, although there is some conflict in the authorities, is that, if the evidence given by the plaintiff would not authorize the jury to find a verdict for him, or if the court would set it aside if found, as contrary to the evidence, a nonsuit should be granted on defendant's motion." See pages 690, 691, and authorities cited.

In this case it is not necessary to carry the rule to its verge.

We do not think it can reasonably be inferred from the evidence introduced that the appellee was guilty of any negligence which caused the injury to the appellant. There was a shaft, or passage, leading from the surface, a distance of some one hundred and twelve feet below, and into the mine, constituting the way of ingress and egress to and from it, and through which the men were lowered to the mine in the morning, and lifted from the same in the evening, and through which the coal was elevated to the surface. This was operated by two cages, as they are termed, elevated and lowered by steam power, one being at the top when the other is at the bottom, passing each other midway as the one is lowered and the other is hoisted. They were used to lower the men to the mine, and to raise them from the same, as well as to elevate the coal from the mine to the surface. The coal, at the time of the injury, was being mined some distance from the bottom of the shaft, and there were entries leading in a north and south direction from the bottom of the shaft some distance to the various points where the men were at work in the mining of the coal. There was a passageway in the mine, around the shaft, starting in about thirty feet upon the one side and

coming out about the same distance on the other, where the workmen could pass from one side of the mine to the other around the shaft in safety. At the bottom of the shaft there was a division rail, or post, extending upward on each side, in the center of the shaft, at the sides, separating the two cages as they passed up and down, and the bottom of the shaft on which the cages rested when down was about two feet lower than the bottom of the mine, so that when the cages were being operated, and were on their passage from top to bottom, and *vice versa*, there was the division part and depression to designate the point where the shaft was located.

The appellant was a brick mason by trade, and had never worked in or been in a mine until employed by the appellee. He went into the mine on Saturday, and was shown to his work, and worked during the day, and came out in the evening. The point where he worked was some distance from the shaft. There were no lights in the mine, except those used by the miners on their caps, and such light as shone through the shaft. On light days there was some light cast through the shaft to the bottom, giving some light in the immediate locality of the shaft.

On Saturday appellant was shown his place to work, a boss came to him two or three times during the day, and on one occasion inquired as to his name, and took it down, and directed him to heed no person but him.

On Monday morning the appellant returned to his work. He was lowered to the mine through the shaft, as he had been on Saturday. His boss was not at the surface when he went there, and but two or three others went into the mine at the time he did. When he reached the mine his boss was not there; he made inquiry for him, and not finding him, according to his own testimony, he thought he could find his place to work without a guide, and undertook to do so on his own responsibility. After going some distance, which he estimates as near a fourth of a mile, and meeting

several persons, and inquiring for his boss, he was informed that he was astray, and that his boss worked on the other side of the mine. He then made his way back to the shaft. On his way to the opposite side of the mine, when he reached the shaft, there were several persons standing by it, probably upon the opposite side, with lighted lamps upon their caps; his lamp was also lighted. He testified that he knew the shaft was there, and undertook to walk directly across it, and when under one of the cages, as it was being lowered, it came down upon him, injuring him very seriously. He must have stepped down into the bottom of the shaft, which the evidence shows to be some two feet below the bottom of the passageway, or mine, though he testifies that he had no knowledge of stepping down into it. The appellant had been let down into the mine, through the shaft, on Saturday morning, and lifted from the same in the evening, and again let down on Monday morning but a short time previous to the injury. There were no lights in the mine, except the lighted lamps on the caps of the miners. Instead of waiting and being shown to his work in the mine, he says he thought he could find the place, and undertook, of his own volition, to do so. The miners were only accustomed to return to the shaft in the evening, when they ceased work, to be lifted to the surface. The appellant, failing to find his place to work, returned to the shaft. He knew when he reached it, and carelessly walked in under the cage as it was being lowered. He must have known the use made of the shaft and the cages, the manner in which the cages were hoisted and lowered. Knowing he was at the shaft, as he says, he was required, if he attempted to cross the shaft at all, to observe the cages, and do so when he could avoid danger, to use care proportionate to the known danger; but he gave no heed to the situation, and undertook to cross, and received the injury.

Section 5467, R. S. 1881, provides that the owners of coal mines shall cause to be cut in the side of every hoisting

shaft, at the bottom thereof, a travelling-way sufficiently high and wide to enable persons to pass the shaft in going from one side to the other, without passing over or under the cage, or other hoisting apparatus. There was such a travelling way around this shaft. The law requiring such a way to be made for the benefit of the men who work in the mine, there would be some reason in holding that the appellant knew that such a way was required by law, and that it was his duty, if he desired to cross from one side of the mine to the other, to seek such travelling-way, and pass through it; and that if he attempted to cross over or under the cage he did so at his peril, though it is not necessary to go to the extent of holding this to be the law in this case, for even if the appellant had the right to cross under the cage, he was bound to use due caution and care proportionate to the danger in attempting to do so, which he did not; but on the contrary, knowing he was at the shaft, he carelessly and negligently attempted to cross under the cage without giving any heed whatever to the situation or danger. *City of Richmond* v. *Mulholland,* 116 Ind. 173, and authorities there cited.

There is some evidence to show that the cagers who worked at the bottom of the shaft loading the coal to be lifted could call to persons attempting to cross, and warn them of their danger, and upon some occasions they did so; but if this be true, and the cagers neglected to warn the appellant, it would not create a liability on the part of the appellee. The law does not contemplate that employees working in a mine should cross over or under the cage. It has made provision for a passageway around the shaft, where they may pass in safety. The cagers are not placed there as watchers to warn passers-by of their danger, as watchmen are placed at railroad crossings. They are placed there to perform other labor, the loading and unloading the cages, as they are lifted up and down. There is no evidence that they even saw the appellant approaching; and even if they neglected a duty, it

was but the negligence of a fellow servant, for which the appellee would not be liable.    *Brazil, etc., Co.* v. *Cain,* 98 Ind. 282.

There is no error in the record.

Judgment affirmed, with costs.

Filed April 7, 1892.