Colf vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

**Colf, Respondent, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Appellant.**

*February 26 — March 16, 1894.*

*Railroads: Injury to switchman: Proximity of unused switch stand to track: Assumption of risk: Contributory negligence: Court and jury: Evidence.*

1. A stub switch stand in defendant's switch yard stood so near the main track that its arm, projecting at a height of two feet, was only seven and one-half inches from the gangway step of a passing engine. It was considerably nearer the track than other switch stands in the yard, and was never used, and no light was provided for it. *Held*, that it was a question for the jury whether, as to employees working in the yard at night, defendant was negligent in locating and keeping the switch stand in that position.

2. Plaintiff, in the performance of his duties, at night, was riding on an ordinary road engine which was used for switching in that yard, and was about to "swing off" from the gangway step, when his foot caught on the arm of said switch stand and he was injured. He had worked in the yard a considerable time, but always at night. He had never thrown this switch, because it was never used, and had never noticed that the stand was nearer the track than others in the yard. It bore no light, and plaintiff's attention was momentarily drawn from his own safety by the necessity of giving instructions to a new hand. *Held*, that it was a question for the jury whether he had assumed the risk.

3. Whether plaintiff was guilty of negligence in attempting to jump from the engine as he did, was also a question for the jury.

4. Evidence that it was the practice of men in the yard to jump from the engine while it was moving, was not admissible upon the question of plaintiff's negligence in so doing.

APPEAL from the Circuit Court for *Eau Claire* County. Action for personal injuries. The plaintiff was an employee of defendant in its switch yards at Elroy, Wis., for about twenty months prior to the 27th of November, 1890, when the accident happened. Up to the 24th of November he had been helper in the night crew in the yard. The

Vol. 87 — 18

Colf vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

night crew consisted of the yard foreman, a helper, an engineer, and a fireman. They used an ordinary road engine for switching purposes, and their general duties were to switch cars, and make up trains, and put them in the proper places. Their hours of labor were from 6 P. M. to 7 A. M. The foreman checked the numbers of the cars, saw where they belonged, directed the placing of cars and trains, and assisted in switching and making up trains. The helper switched cars, coupled and uncoupled them, and assisted in making up trains. The engineer and fireman operated the engine. On the 24th of November the plaintiff was promoted to be foreman of the night crew, and a green hand was put in as helper. There were seven or eight switch tracks in the yard, and some fifteen or twenty switches and switch stands.

At about 10:40 P. M. on the night of November 27th, a dining car and another coach were standing on one of the switch tracks in the yard adjoining the main track, and it became necessary to move them out on the main track. Between this switch track and the main track, and opposite the dining car, there was a stub switch stand, which was spiked in position, and had never been used. The arm of the switch stand was of iron, and projected towards the main track at a height of about two feet above the ground. The end of the arm was turned upward to make a handle, and was but two feet seven inches distant from a line drawn vertically from the nearest rail of the main track. The switch engine and crew were at the depot some 175 feet or more distant on the main track, and they started to do this switching, all being on the engine, the plaintiff standing in the gangway on the side next the switch track, and the helper on the other side. The plaintiff was giving the new helper some instructions as the engine moved along. There were steps on each side of the gangway, and plaintiff was standing on the step on his side. As they

got to the dining car, plaintiff, while still giving instruc-
tions, was preparing to " swing off " while the engine was
in motion and jump to the ground, in order to disconnect
the bell cord, hose chains, and raise the lever, so as to cut
off the dining car from the coach.   As he swung his right
foot off, and was about to jump, his foot caught on the
arm of the stub switch, and " keeled " him over on the
ground, and his left foot was crushed by the wheels of
the engine.   The plaintiff testified that the engine was going
at about five miles an hour.

The jury returned a general verdict for the plaintiff, with
damages assessed at $4,879, and from judgment thereon de-
fendant appeals.

For the appellant there was a brief by *Thomas Wilson*,
*S. L. Perrin* and *R. J. MacBride*, and oral argument by
*Mr. MacBride*.

*T. F. Frawley* and *W. H. Stafford*, for the respondent.

WINSLOW, J.   It is strongly contended by the appellant
that no negligence is shown on the part of the railway com-
pany in locating and keeping the switch stand in question
so near the main track.   We think the question was fairly
one for the jury.   That it was so close to the track as to
be dangerous to switchmen in performance of their or-
dinary duties can hardly be doubted.   There is testimony
to show that the projecting arm was only seven and one-
half inches from the gangway step of an engine as it passed
the spot.   Again, there was evidence that it stood consid-
erably closer to the track than other switches in the yard,
and, it being kept spiked and never used, its relation to the
track might naturally not be noticed by an employee as
readily as the location of other switches which were in
constant use.   It further appeared that no light was ever
provided for it.   In view of the decisions of this court in
the cases of *Dorsey v. P. & C. Const. Co.* 42 Wis. 583, and

*Kelleher v. M. & N. R. Co.* 80 Wis. 584, we cannot say as matter of law that there was no negligence on the part of defendant in placing the switch stand where it was, especially as to employees compelled to perform their duties in the yard in the darkness of night.

Nor can we say as matter of law that the plaintiff must be held to have assumed the risk. It is true that the plaintiff had worked in the yard a considerable time, but he had always worked at night. He had never been called on to throw this switch, because it was never used. The switch was nearer to the track than other switches in the yard,— a fact which he testifies he never had noticed. It bore no light, and the attention of plaintiff was momentarily drawn from his own safety, by reason of instructions which he was necessarily giving to the new hand. Under all the circumstances, this question, also, was for the jury. The case of *Dorsey v. P. & C. Const. Co.* 42 Wis. 583, seems decisive on this point also.

A rule of the company was introduced in evidence which strictly prohibits employees from jumping off engines or trains moving at a high rate of speed, but it was undoubtedly a question for the jury whether this engine was at the time in question going at a high rate of speed. It was claimed that the plaintiff must be held guilty of negligence, as a matter of law, in attempting to jump from the engine as he did, while in motion. This also is properly a question for the jury, considering his duties and all the attending circumstances.

There was, however, a ruling upon evidence made during the trial which we are satisfied was erroneous. One Staler, a switchman in the yard, was asked what the fact was in doing work in the yard, and the practice of men getting off of the engine when moving, and, against objection, he answered that they did. This was entirely a collateral matter. It raised other issues not essential or legitimate in the trial

of this case.  To determine whether the other employees who jumped from engines were negligent in so doing would necessitate an inquiry into the facts of each case, and thus open up an interminable field of contention.  There was no offer to show that such a practice was known to any officer or employee of the defendant whose duty it was to regulate the location of switches or other structures.  The necessary effect of such testimony would be to cause the jury to believe that, if others jumped from engines, it was not negligence for the plaintiff to do so.  There is no such rule.  *Lewis v. Smith*, 107 Mass. 334.  For this error there must be a new trial.

*By the Court.*— Judgment reversed, and action remanded for a new trial.