INDIANA, ILLINOIS AND IOWA RAILROAD COMPANY
*v.* BUNDY.

[No. 18,228. Filed March 5, 1899. Rehearing denied June 13, 1899.]

NEGLIGENCE.—*Assumption of Risk.*—*When Question of Fact.*—Plaintiff while coupling cars caught his foot in an exposed wire used in an interlocking switch device, and was injured. The evidence showed that plaintiff as brakeman had passed the switch at the place of the accident a number of times, but had not observed that the wires were unboxed; that at the time of the injury it was dark, and plaintiff had a lantern in his hand with which he was signaling the engineer in the movement of the train, and, being occupied in observing the movement of the train, he stepped in to make the coupling without noticing the wire along side the track; that the usual mode of constructing interlocking switch devices is to

Indiana, etc., R. Co. *v.* Bundy.

leave the wires uncovered from the derail to the distant signals, but that in switch yards where a large amount of car handling is required the generally approved method is to box the wires at such places. . *Held,* that the questions as to defendant's negligence and assumption of risk by plaintiff were properly submitted to the jury. *pp. 592-597.*

EVIDENCE.—*Personal Injuries.—Railroads.*—Where, in the trial of an action for damages on account of personal injuries sustained by plaintiff in catching his foot in an exposed wire used in an interlocking switch device while coupling cars, the court permitted defendant to show that other first-class roads constructed such switches in a similar manner, no error was committed in refusing it the right to show the particulars in the construction of such switches, other than upon its own road. *p. 600.*

SAME.—*Personal Injuries.—Railroads.*—In the trial of an action for a personal injury sustained by plaintiff in catching his foot on a wire used in a switching device while coupling cars,. evidence of defendant's foreman of the switching crew that he had notified the superintendent prior to plaintiff's injury that the exposed wires were dangerous to men working around the track, and the superintendent's reply thereto, was properly admitted in evidence. *p. 600.*

SAME.—*Railroads.—Personal Injuries.—Rules of Company.*—Rules of a railroad company for the government and information of its employes are not admissible in evidence in the trial of an action against the railroad company for a personal injury to an employe, where it was not shown that plaintiff had ever received a copy of the rules. *pp. 600, 601.*

INSTRUCTIONS.—*Time of Presentation.—Appeal and Error.*—Defendant's exception to the refusal of the court to give instructions tendered is not prejudiced by a recital in the record showing that the instructions were offered and rejected before the close of the evidence. *pp. 601-603.*

SAME.—*Exception.—Marginal Notes.—Appeal and Error.*—An exception to the refusal of the court to give an instruction tendered by defendant is properly reserved by an indorsement on the margin thereof "refused and excepted to", although such marginal notes do not disclose which party excepted. *pp. 603, 604.*

SAME.—*Exception.—Marginal Notes.*—An exception to an instruction given by the court on its own motion by an indorsement on the margin thereof " given and excepted to " is not properly reserved, where it is not shown by the bill of exceptions that either party took or reserved exceptions to such instructions. *pp. 604, 605*

SAME.—*Refusal to Give.*—The refusal of instructions is not error where the instructions offered were given in substance by the court on its own motion. *pp. 605, 606.*

NEGLIGENCE.—*Railroads.—Construction of Switch Device.—Proof as to Similar Devices.*—A railroad company cannot establish freedom from negligence by showing the construction of its switch device to be similar to like devices upon another first-class railroad, without further showing, if the construction may be dangerous to employes at work about it, that it had given notice of the danger, or given the servant such an opportunity to observe it as would have put a reasonably prudent person on his guard.  *p. 606.*

INSTRUCTIONS.—*Railroads.—Personal Injury.—Master and Servant. —Knowledge of Danger.*—An instruction in the trial of an action against a railroad company for injury to a brakeman caused by catching his foot in a wire used in connection with an interlocking switch device, to the effect that if plaintiff knew the method of operating interlocking switches he was bound to know the particular grounds occupied by the wires, is erroneous, where no reference is made to plaintiff's opportunity for observation or inquiry, or to the number of tracks at the place of the accident.  *pp. 606, 607.*

From the Lake Circuit Court.  *Affirmed.*

*F. S. Fancher* and *H. K. Wheeler,* for appellant.

*E. D. Crumpacker* and *G. Crumpacker,* for appellee.

HADLEY, J.—The evidence discloses that the appellant owned and operated a railroad extending from Streator, Illinois, to Knox, Indiana, and in connection therewith operated a leased line from Wheatfield, Indiana, a station on their main line, to North Buffalo, Michigan.

Appellee, who was plaintiff below, went into the employment of appellant in December, 1891, as a brakeman on a freight train, and continued in the same capacity till December 22, 1894, when, while attempting to couple cars in the switch yard at North Judson, Indiana, he fell over uncovered signal wires along the track, and his arm was caught between the deadwoods and crushed.  North Judson is a station at which appellant's road, running east and west, is crossed by the Erie and Pan Handle Railways, running north and south, which three companies maintain at North Judson an interlocking switch device.  The east signals on appellant's road are operated by two wires, less in size than telegraph wires, running eastward from the crossing on the

south side of appellant's main track, 300 feet, to the derail. They at that point cross under the track to the north side, and thence extend eastward, parallel with, and forty-two inches from, the north rail of the main track, 1,200 feet, to the distant signal. These wires are boxed from the crossing to the derail. From that point eastward to the distant signal they are uncovered, and rest upon pulleys set in the tops of posts, three inches from the ground, and about forty feet apart. The ground over which the wires run is sandy. The operating wires are similarly constructed west of the crossing, except that on the west the wires are boxed for a distance of 360 feet. The appellant, among others, maintains a side-track south of its main track, east of the crossing, which extends to the eastward about 700 feet east of the distant signal, and, west of the crossing, a side-track on the north side of their main track, extending westward about half a mile, and about 1,000 feet west of the west distant signal. The Erie maintains "yards" on the east of the crossing, and the Pan Handle "yards" are on the west of the crossing, and north of appellant's tracks. The interchange of cars among these roads was so considerable as to make it necessary for appellant to maintain at this point a switch engine, and switching force of five men, including engineer and fireman. This switching crew performed all the switching at this point. It would collect the cars from the yards of the other two companies, and place them in train order,—those to go west on appellant's side-track above described west of the crossing, and those to go east on the side-track east of the crossing,—to be taken out by appellant's through freight trains from the west and east ends, respectively, of said side-tracks.

Soon after appellee's employment, in 1891, appellant constructed interlocking switches at Dwight and Momence, Illinois, and in September, 1892, constructed the one at North Judson, and also had a similar device at Magee and La Porte,

on the New Buffalo branch. At these several points the wires from the derail to the distant signals were uncovered, and constructed in a manner similar to the one at North Judson. At Dwight the exposed wires were on the south side of the main track, and from a siding on the opposite side of the main track appellee had frequently coupled cars to his train, performing the work from each side of the side-track, but usually from the north side. At the other points where interlocking systems were maintained, except North Judson, no switching or coupling or uncoupling of cars was done in the vicinity of the exposed wires. For a period of two years after the construction of the interlocking systems, and next before the accident, appellee made from two to four trips a week over the road; two-thirds of the trips being from Streator to New Buffalo, and one-third to Knox, via North Judson, passing the latter place twenty-five or thirty times in daylight. His station in travel was on top of the train, or in the cupola of the caboose. The outside walls of the freight cars projected two and one-half feet outside the rails. Appellee was occasionally on the station platform at North Judson in daylight, but never walked on the ground along any part of the uncovered wires to reach the platform. The wires operating the switch and signals are boxed for 300 feet eastward from the station platform, and three hundred and sixty feet westward. Six days before the injury, appellant had opened an extension of its road to South Bend, and discontinued and removed its switching crew from North Judson, thus imposing upon train crews the duty of switching and picking up cars at the latter place. Appellee was returning from his third trip to South Bend and at 12:30 o'clock a. m., was called upon to couple a car to his train at a point from 325 to 340 feet east of the crossing. It was dark, and appellee had in his hand a lighted lantern, with which he twice signaled the engineer to back slowly, and, being occupied in observing the movement of the train, at the proper moment attempted to step in and make the coupling,

but lodged his foot under the open wires, and, falling towards the train, threw himself forward in an effort to reach the deadwoods, to avoid falling across the rail; and thus his arm was caught between the deadwoods and crushed, making amputation above the elbow necessary. This was appellant's first attempt at coupling or uncoupling cars in that vicinity, or east of the crossing. He had never seen the open wires at that station. He had never been informed that they were open. He did not know they were open, and did believe they were all boxed, at that crossing. No objection to this complaint is urged by appellant, and the questions discussed all arise under the motion for a new trial. The negligence charged against the appellant is in maintaining the wires along the side of its road in an uncovered and exposed condition, at a point where its employes are required to go in to couple and uncouple cars. The insufficiency of the evidence to sustain the judgment below is urged by appellant.

It is a familiar rule that railroad companies are required to construct their roadways and appurtenances in such a manner as will enable their employes to perform the labor required of them with reasonable safety. *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Louisville, etc., R. Co.* v. *Wright,* 115 Ind. 378-385. This rule requires a railroad company, in any structure erected by it, to have regard for the safety of its employes while engaged in discharging their duties in relation thereto. The environments of the situation, the nature and extent of the services required of its employes, must have potent consideration, and such structure accomplished in a manner that has in view the highest degree of safety that ordinary care will provide. The appellant is excused if it maintains its roadway and appendages in a fashion generally approved and adopted by other first-class railroads of the country. But in this case the evidence tends to show that, while the general mode of constructing interlocking switch devices is to leave the wires uncovered from the derail to the distant signals, yet it also tends to prove that

in switch yards, and places where a large amount of car handling is required, the generally approved, and usual method of first-class roads is to box the wires at such places. Without any doubt, the evidence is of a character to carry to the jury the question of appellant's negligence in maintaining uncovered wires at the place of appellee's injury.

Appellant further insists that, aside from the question of its negligence with respect to the open wires, there can be no recovery, for the reason that the danger, whatever it was, was apparent and known to appellee, and assumed by him, in his continued voluntary service with the company. It is a well established rule that one entering the service of a railroad company must do so with his eyes open, for he will be held to assume all the usual and obvious dangers incident to the employment. He must heed appearances and note consequences, and if, by his carelessness, he overlooks that which he might have observed by the exercise of ordinary care, his want of knowledge will be no excuse in case of injury. *Brazil Coal Co.* v. *Hoodlet,* 129 Ind. 327; *Louisville, etc., R. Co.* v. *Buck,* 116 Ind. 566, 573; *Cincinnati, etc., R. Co.* v. *Roesch,* 126 Ind. 445, 447; *Cincinnati, etc., R. Co.* v. *Lang,* 118 Ind. 579, 583. But, while the employe is thus held to diligence for his own safety, he has the right to repose confidence in the prudence and caution of his employer, and may rightfully presume that the employer, with respect to the same object, has performed his duty, and has invested all places and situation, with such safeguards as ordinary prudence require. *Baltimore, etc., R. Co.* v. *Rowan,* 104 Ind. 88; *Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156, and cases cited. The evidence adduced is not of a character to warrant this court in saying, as a matter of law, that the risk of the open wires was assumed by appellee. There was evidence that there were two light-colored wires, "less than telegraph wires," drawn over, and four inches above, a sandy roadbed. Appellee was a rear-end brakeman on a through freight

train, and his post of duty in travel was on top of his train, or in the cupola of the caboose. The line of wires was twelve inches out from the outer walls of the moving freight cars, and not observable from the top of the train. Appellee had passed the wires twenty-five or thirty times in daylight, but before the accident had not been on the ground at any point along the uncovered wires east of the crossing, and did not know they were uncovered, and believed they were boxed. The wires were boxed with boards about eighteen inches wide on top, and six inches high, for a distance of 300 feet east and 360 feet west of the crossing. The boxed wires on the east side were on the south side of the main track for the first 300 feet from the crossing. Appellee had been several times on the station platform at the crossing, and had observed the boxed wires on the south side of the main track, but had not observed that the boxing ceased 300 feet to the east, or that at that point the wires crossed the main track to the north side, and proceeded thence eastward to the distant signal uncovered, and had not been notified, and did not know that such was the fact. The accident occurred about midnight. Appellee walked for some distance on the north side of the main track, along the exposed wires, about a rod distant, with a lighted lantern in his hand, to where the car stood that he was directed to couple to his train. He, and the backing train, arrived at the standing car about the same time. He signaled twice with his lantern to back slowly. His mind was absorbed in the moving train, and the exact moment when he must act to make the coupling. His line of vision at the time and place of the injury was necessarily above the wires. It is clear that upon these facts the question was with the jury to say, upon the whole evidence, whether appellee had assumed the risk of the open wires. *Cincinnati, etc., R. Co.* v. *Grames,* 136 Ind. 39; *Indiana Car Co.* v. *Parker,* 100 Ind. 181, 197, and cases cited; *Rush* v. *Coal Bluff, etc., Co.,* 131 Ind. 135; *Evans* v. *Adams Express Co.,* 122 Ind. 362, 7 L. R. A. 678.

Appellant cites numerous cases in support of its contention that the risk was an assumed one. But it must be borne in mind that the rule contended for is relative, and not absolute, and its application must be determined by what constitutes reasonable and ordinary care, under the facts of each particular case.

In the case of *New York, etc., R. Co.* v. *Ostman*, 146 Ind. 452, the plaintiff's decedent was killed by a cattle chute that stood within thirteen inches of the outer wall of a passing locomotive cab, and eight and a half feet high, with board wings and gates, and could be easily seen by the trainmen for a half mile in either direction. The deceased, as a locomotive fireman, had passed the chute twice each week for sixteen months, and had frequently aided in switching cars by it. At the time of his injury he was engaged in switching, and having carelessly thrust his head out of the cab window, and thus riding with his face to the rear, he collided with the chute and was killed.

In the case of the *Pennsylvania Co.* v. *Finney*, 145 Ind., 551, the injured party, from inattention, was knocked off the train by a water crane that stood seventeen feet high, and four feet from the track, and which he had passed almost daily for six months, and could see it for half a mile from either direction.

In the case of the *Wabash Paper Co.* v. *Webb*, 146 Ind. 303, the plaintiff was injured by being caught by a projecting oil cup and clutch on a revolving shaft. The shaft and projecting clutch were fully exposed. He had worked in the mill about two years, and about the particular machine for about three weeks, and had oiled the very clutch that caught him. In these and other cases cited, of similar import, the court held that the servant had assumed the risk, but the material facts in these cases are not analogous to the facts under consideration. The danger in these cases was easily apparent, was immediately present, and stood out so prominently as to press observation upon the servant of ordinary

intelligence.   We do not mean to say that, to charge the servant with an assumption of the risk, the evidence of danger must be as strong and cogent as it appears in these cases; but we do say that the presence of danger must be obvious from such appearances as will put a man of ordinary prudence and caution upon his guard, or the servant will be excused.

Duty had taken appellee along the exposed wires whereby he was hurt.  He knew that the distant signals of interlocking switch devices were operated from the tower by wires, but, according to his testimony, his observation had been that the wires were covered through switching yards of other roads, and left exposed where no car handling was required.   East of the crossing, and near the station platform, where he had been a number of times in daylight, the wires with which the eastern signals were operated were constructed on the south side of the main track, and boxed with boards from the crossing eastward for about eighteen rods.   If any presumption will arise from this situation, it will be that the wires continue on the south side of the main track to the distant signal.   Surely, under the evidence adduced, there could be no presumption arise that at a point about eighteen rods east of the crossing the wires ceased to be boxed, and there crossed from the south to the north side of the main track, and thence along the north side to the signal.   Furthermore, it may well be doubted, if a person of ordinary vision, standing on the station platform, can see two light-colored wires, "less than telegraph wires," beginning 300 feet away, and stretched four inches above a sandy background, and, if possible to see them, whether the situation was such as to attract the attention of a man of ordinary caution to the fact.   Appellee was not bound to know of latent perils, nor was he required to hunt after them, but he is exonerated if he heeded such cautionary manifestations as would put a man of ordinary prudence and caution upon inquiry.   We think it is clear that the question of appellee's

knowledge of the exposed wires, and his means of knowledge, by the exercise of reasonable caution, was a question for the jury.

Appellant insists that the court erred in denying it the right to show that other first-class roads had their interlocking switch devices constructed in the manner similar to the one in controversy. The court permitted appellant to give evidence touching the practice of railroads generally in the construction of interlocking switches, but denied it the right to show particulars in construction, other than upon the line of appellant's road. In this the court committed no error. *Lake Erie, etc., R. Co.* v. *Mugg*, 132 Ind. 168, 175; *Louisville, etc., R. Co.* v. *Wright*, 115 Ind. 378; *Bassett* v. *Shares*, 63 Conn. 39, 27 Atl. 421; *Colf* v. *Chicago, etc., R. Co.*, 87 Wis. 273, 276, 58 N. W. 408. The court permitted, over appellant's objection, one Harvey, who was foreman of the switch crew at North Judson, and had worked over and about the open wires in question, to testify that prior to appellee's injury he repeatedly notified appellant's general superintendent that the exposed wires within the yard limits at North Judson were very dangerous to the men at work around and over them, and also to state the superintendent's reply. This decision of the court is fully supported by the case of *Louisville, etc., R. Co.* v. *Wright*, 115 Ind. 378, 393, and cases there cited.

Appellant's rules 607 and 608 for the government and information of employes were offered in evidence. Appellant's learned counsel say in their brief: "These rules were offered in evidence for the purpose of showing that it was the duty of Bundy to examine the condition of all machinery, tools, tracks, cars, engines, or whatever he might undertake to work with, before he made use of the same, and ascertain their condition, for his own safety." The law required of Bundy such inspection and examination of all places and appliances where and with which he was put to work as a man of ordinary care and caution would make in a like situation,

and it can hardly be claimed that the rules refused enjoined upon the employe a higher degree of care. Bundy, appellee, went into the service of the company in December, 1891, and the rules in question were promulgated in September, 1893. The evidence tended to show that the rules were printed on time-table number twenty-eight. Bundy, on cross-examination, denied that he ever received a copy of the rules, and claimed he never had, as his own, a copy of time-table twenty-eight, but sometimes got the conductor's, and had access to copies of said table to be found in the caboose. No effort was made by appellant to prove that a copy of the rules was ever given or tendered to Bundy, or his attention directed to them, except as was shown by his cross-examination, with result as indicated above. Neither was there any effort made by appellant to prove that Bundy had violated any provision of the rules offered. *Lake Erie, etc., R. Co.* v. *Mugg*, 132 Ind. 168, 173. Without some further evidence that appellee had received the rules, or had knowledge of their contents, the court was warranted in excluding the evidence.

Another reason for a new trial is that the court erred in refusing to give to the jury certain instructions, and in giving of its own motion certain other instructions. Appellee claims that the instructions asked by appellant and refused are not in the record, because prematurely presented. The recitals of the clerk in the record show that (December 4, 1896), "thereupon, before the argument, the defendant now tenders to the court, and asks the court to give to the jury at the proper time, certain written instructions, which are by the court refused, and the defendant separately excepts to each instruction refused to be given by the court; and said exceptions are indorsed on the margin of each of said instructions, and said exceptions are respectively signed by the court, and are thereupon ordered filed and made part of the record, without a bill of exceptions, and are in the words following." There follows twenty-one instructions, on the margin of each of which are these words: "Refused and ex-

cepted to this December 4, 1896. Jno. H. Gillett, Judge;" and upon the same day, the further entry and recital, "And the jury having heard the remainder of the evidence, and argument of counsel, the court now proceeds to instruct the jury, and each party at the time now excepts to each instruction given by the court to the jury, and their respective exceptions are noted upon the margin of said instructions, and respectively signed by the court, which instructions so given by the court, and the said exceptions thereto, are now likewise ordered filed, and made a part of the record herein, and the same are in the words following, to wit." Next follows thirteen instructions, with the words following indorsed on each; "Given and excepted to December 4, 1896. Jno. H. Gillett, Judge."

It is insisted by appellee that, since it appears from the first entry that "before the argument" the defendant tenders its instructions, and in the subsequent entry of the same day, that "the jury having heard the remainder of the evidence, and argument of counsel, the court now proceeds to instruct the jury," we must construe the record as disclosing that appellant presented its instructions to the court, and obtained the court rulings thereon, and reserved exceptions, before the close of the evidence, and that inasmuch as the record does not show that appellant's instructions were again presented, rulings had, and exceptions reserved, after the close of the evidence, therefore it affirmatively appears that the tender of the instructions was untimely, and presents no question for this court.

We cannot agree with the learned counsel for appellee in this insistence. Even if this court was bound by the recitals of the clerk, we could not give the record the construction contended for. The recital is that "before the argument" (not before the close of the evidence) the defendant presented its instructions, to be given "at the proper time". And even if the tender was made before the evidence closed, as insisted, that will furnish no reason why appellant's right to

exceptions should be prejudiced. The preparation of instructions is a delicate task, and should always be performed with deliberation and care, and should never be postponed till after the evidence is closed, only in exceptional cases, and as to exceptional facts. There are most excellent reasons why the fair and cautious attorney should prepare his instructions before, or during the progress of the trial, and tender them to the court at the earliest moment, that he may have time for full consideration. It is the duty of the court not to act adversely upon instructions until the evidence is all in, unless it seems clear that they are improper under any possible evidence, in which case, if the court, in fact acts, and indorses his refusal thereon, during the progress of the evidence, and subsequently withholds them from the jury, it cannot be said that the party thereby loses his right to exceptions, if timely taken. All inferences are in favor of the right action of the court, and, upon the record before us, we conclude that, without regard to the stage of the trial at which the instructions were presented, it was the duty of the court to act upon them, and that it did act upon them, in view of all the evidence, and that the exceptions reserved by appellant related to the act of the court, whenever that duty was actually performed, at any time before final submission.

It is further insisted by appellee that appellant failed to save exceptions to the refusal of the court to give to the jury the instructions asked. Section 544 Burns 1894, provides that it shall be sufficient to save exceptions by writing on the margin of each instruction the words, "Refused and excepted to," to be signed by the judge and dated. The instructions asked by appellant had indorsed on the margin of each: "Refused and excepted to December 4, 1896, John H. Gillett, Judge." It is true that these marginal notes do not disclose which party excepted, but it was a ruling that did not concern appellee, and one about which he could not complain, nor be entitled to an exception; hence, it must be held that they were the exceptions of appellant. The instructions

asked by appellant and refused, and the exceptions thereto, are therefore properly in the record.

The instructions given by the court of its own motion are in the record, both by order of court and bill of exceptions, but it is urged by appellee that appellant has saved no exceptions thereto. Outside the recitals in the order-book set out above, no exceptions by either party appear anywhere in the record, except that there is written on the margin of each of the instructions so given to the jury, the following words: "Given and excepted to, December 4, 1896. John H. Gillett, Judge." Exceptions to instructions must be saved in the manner prescribed by statute, or by order of court or bill of exceptions. *Ohio, etc., R. Co.* v. *Dunn,* 138 Ind. 18; *Childress* v. *Callender,* 108 Ind. 394; *Fromlet* v. *Poor,* 3 Ind. App. 425, 430. Recitals in an order-book are not a statutory mode. Section 544 Burns 1894, *supra.* To be saved by a bill of exceptions or order of court, "what occurred in the way of exceptions to the giving of instructions must be stated in the bill or order as facts, and be authenticated by the signature of the judge." *McKinsey* v. *McKee,* 109 Ind. 209, 212. The bill of exceptions before us recites, "Be it remembered that at the proper time after argument the court, of its own motion, gave to the jury the following instructions, numbered one to fourteen, inclusive." Then follows fourteen instructions, each having written at the bottom the words: "Given and excepted to December 4, 1896. Jno. H. Gillett, Judge." And following the last are these words: "And these were all the instructions given by the court in the above entitled cause. Jno. H. Gillett, Judge Lake Circuit Court." Nowhere in the bill is it stated as a fact, or even recited that either party took or reserved exceptions. It therefore follows that we must look exclusively to the words, "Given and excepted to," written on the margin or at the bottom of each instruction, in determining the sufficiency of the exceptions. Without extrinsic support, there seems noth-

Indiana, etc., R. Co. *v.* Bundy.

ing for them to stand upon. Both parties were equally affected by the instructions, and both equally entitled to exceptions. But which party took them is not affirmatively shown. The law permits no such uncertainty in appeals. This court cannot be called upon to reverse the court below, unless error is clearly presented by the record, properly authenticated. *McKinsey* v. *McKee,* 109 Ind. 209, 212. To be sufficient to reserve exceptions to the giving of instructions, the marginal memoranda should also state the party in whose behalf the exceptions are allowed. The record discloses no exceptions on behalf of appellant to the instructions given by the court, and hence no question arises upon them in this court.

We come now to the final inquiry. Did the court err in refusing to give the jury the instructions asked by appellant? Numbers two, twelve, fifteen, and sixteen are the only ones discussed in appellant's brief. The second in substance, stated that the plaintiff charged in his complaint, that the defendant had two wires extending along the north side of its main track east of the crossing at North Judson; that said wires were uncovered and exposed, and that plaintiff had no knowledge, or means of knowledge, that said wires were uncovered; and that if the jury believed that the plaintiff frequently worked at North Judson, around and over said wires, and by the exercise of ordinary diligence he could have discovered them, then it makes no difference in this case whether or not he actually discovered them. The court informed the jury, in its number four, that a servant assumes not only the ordinary risks of the employment, but he also assumes every risk due to defective appliances of which he has knowledge, or of which he is put upon notice by circumstances coming to his knowledge, which would be reasonably calculated to put a person of ordinary prudence upon his guard as to the existence of such defects, and in number five charged: "If the plaintiff had actual knowledge that the uncovered wires were at the place where he was injured, that

destroys his right of action. If he ought to have known of them, or been on his guard against them, the result must be the same." Reading numbers four and five together, they cover all the facts embraced in appellant's request number two, and more, and put the case in a light quite as favorable to the appellant as did its own, and quite as favorable as appellant was entitled to have it presented.

Appellant's request number twelve is as follows: "The court instructs the jury that if you believe from the evidence that the plaintiff received the injury complained of while coupling cars on the company's main track at North Judson, Indiana, then the defendant is required to construct its wires no better and safer along the main track than other first-class railroads constructed similar wires along its main tracks; and, if you believe from the evidence that other first-class railroads constructed such wires by leaving them open and exposed as the defendant did, then your verdict should be for the defendant." This falls short of an accurate statement of the law. It is too narrow. Appellant cannot establish freedom from negligence by showing a construction of its switch device to be similar to the construction of like devices upon another first-class railroad, without further showing, if the construction may be dangerous to employes at work about it, that it had given notice of the danger, or given the servant such an opportunity to observe it as would have put a reasonably prudent person upon his guard. Furthermore, the proper inquiry is not what other first-class railroad companies have done,—perhaps in exceptional instances,—but what is the general usage in this regard. This instruction contains no such limitation. Numbers fifteen and sixteen, state the same proposition in slightly different language, the substance of which is that if the jury believe that, prior to plaintiff's injury, he knew that an interlocking switch device was maintained by appellant at North Judson, and that it required wires to extend along the track for its operation, then he was bound to look, and see the wires extended

along the track where he worked, and, if he fell over them and was injured, he cannot recover. This implies that if appellee knew the method of operating interlocking switches, and that one was at North Judson, then he was bound to know the particular ground occupied by the wires, without reference to appellee's opportunity for observation or inquiry, or to the number of tracks running east from the crossing, or the particular side of the track occupied, or appeared to be occupied from the only point of view ever had by appellee. Such a rule would utterly strip appellee of all protection afforded by ordinary prudent and cautious conduct in his situation. Numbers fifteen and sixteen were also rightfully refused. The instructions given by the court covered all the material facts and phases of the evidence, and stated the law applicable thereto with admirable precision and clearness. We have reviewed all of the alleged errors discussed by the learned counsel for appellant, and we find no error in the record. Judgment affirmed.