PARK HOTEL COMPANY *v.* LOCKHART.

Opinion delivered Oct. 27, 1894.

*Master's duty to servant—Condition of machinery.*

In an action by a servant to recover from the master for injuries received while engaged in work at a "mangle" in a laundry, the court charged the jury that if the defendant company employed plaintiff to work in the laundry, it assumed the duty to control its mangle, and to keep it in a reasonably safe condition, so as not to enhance unnecessarily the dangers attendant

upon the employment. *Held*, that the instruction was erroneous in declaring as a matter of fact that defendant assumed control of the machinery mentioned, as that was a question of fact to be determined by the jury. *Held*, also, that the instruction was erroneous in declaring that the master assumed the duty to keep the machine in a reasonably safe condition, as the question was, not whether the machine was in a reasonably safe condition, but whether the master had exercised ordinary care to keep it in proper condition.

Appeal from Hot Spring Circuit Court.

ALEXANDER M. DUFFIE, Judge.

STATEMENT BY THE COURT.

This is an action originally instituted in the Garland circuit court, on the 1st day of September, 1891, against the appellant Hotel Company, as defendant, by the appellee, Cora Lockart, as plaintiff, for personal injuries and damages laid at the sum of $25,000. On the 10th of December, 1891, on application of the plaintiff, the venue was changed to the circuit court of Saline county, and, at the March term, 1892, of the Saline circuit court, on application of the defendant, the venue was changed to the circuit court of Hot Spring county, and the transcript was filed in the latter court, August 1, 1892, and the cause was heard on the 9th of August, 1892, the day fixed in the last order for change of venue.

Before going to trial defendant filed a motion for continuance assigning several grounds, among them that the transcript had been received on the 30th day of July, 1892, by the clerk, only two days before the commencement of the term on the 1st day of August, 1892, upon which day it was filed; that Mary Mongovan and Cosby, witnesses on behalf of the defendant, for whose attendance due diligence had been used, were absent, their testimony being material to the defense; the same being set out in full as required by statute, and the application being otherwise in form. The application

for continuance was overruled, and exceptions taken, and the trial proceeded, resulting in a verdict for the plaintiff for the sum of $8000.

Defendant filed its motion to set aside the verdict, and for new trial, which is as follows, to-wit: (1) "The verdict and judgment should be set aside, and new trial granted herein, because the court erred in refusing to postpone trial of this case until the next term of this court, and in forcing the defendant to a trial of the cause at the present term of this court, the transcript on change of venue not having been filed as much as ten days before the first day of this term. (2) Because the court erred in overruling the motion of defendant filed at the present term of the court for a postponement and continuance of this cause until the next term of this court. (3) Because the court erred in permitting, over the objections of defendant, the witness, Jim Brandon, to testify on behalf of the plaintiff, the said witness having admitted on the stand that he had been convicted of the crime of burglary and sentenced to the penitentiary by the State of Arkansas. (4) Because the court erred in admitting as testimony on behalf of the plaintiff the American Tables of Expectancy of Life, and refusing to exclude such testimony from the consideration of the jury. (5) Because the court erred in refusing instructions Nos. 2, 4, 5a, 8 and 14 asked by the defendant to be given to the jury for their consideration in considering the case, and as instructing them on the law of the case. (6) Also the court erred in not giving, as part of the instructions to the jury, as requested by the defendant, the syllabi in the case of *Emma Cotton Seed Oil Co.* v. *Hale*, determined by the supreme court of Arkansas in May, 1892, as appearing in the Southwestern Reporter, vol. 19, p. 600, which instructions, as asked by the defendant, include the entire syllabi Nos. 1, 2, and 3 of said case on page 600 of vol.

19 Southwestern Reporter, all of which the court refused. (7) Because the court, over the objections of the defendant, erred in giving to the jury, as the law of the case, instructions Nos. 1, 2, 3, 4, 5, 6 and 7 on behalf of plaintiff herein, to which the defendant at the time excepted. (8) Because the court erred in instructing the jury as to the law of the case. (9) Because the excessive amount of damages was awarded by the jury under the influence of passion or prejudice. (10) Because the amount of damages assessed by the jury in their verdict was excessive and too large and not warranted by the evidence. (11) Because the verdict of the jury and the judgment of the court are contrary to the law. (12) Because the verdict of the jury and the judgment of the court are contrary to the law and the evidence. (13) Because the verdict of the jury is not supported by the evidence, and is contrary to the law and evidence of the case."

A remittitur of $2000 was entered by direction of the court, when the motion for new trial was presented.

The contention of plaintiff is that the machine at which she was required to work, at the time of the injury complained, was out of repair to such an extent as to render it unusually dangerous, and this was known to defendant, and that the defendant had not used reasonable care in the keeping of said machine in repair, and that the bad condition of the machine was the immediate cause of her injury; and, further, that she was a young and inexperienced person in the business in which she was called upon to labor, and that defendant was guilty of a want of reasonable care in failing to properly warn and instruct her with reference to her duties and the condition and workings of the machine. This is the basis of her claim for damages, and it is only necessary to call attention to so much of the evidence as may sustain or controvert the allegations and counter-allegations and

denials before we come to consider the extent of the injury complained of.

An intelligible description of the machine in this case, known as a "mangle," as gathered from the testimony of witnesses and cuts exhibited, would much shorten this abstract, but a verbal description that would be readily understood is almost an impossibility. Therefore, much must necessarily be left to our otherwise acquired knowledge of such machines. We gather from the testimony that the "mangle" in question is a machine used by laundrymen for pressing and smoothing linen and similar clothes—a process answering to that familiarly known as "ironing." From the testimony adduced, we make the following necessarily imperfect description of the machine which caused the injury complained of in this case. With the exception of the apron in front and the table in the rear, the machine is of iron and steel. The operating part is supported by legs at either end, and stoutly braced in either direction. Above the apron in front and the table in the rear, three metal cylinders, arranged horizontally one above another, are fixed on axles passing through the end supports, at one end terminating in cog-wheels and there working in a common cog-wheel on that side of the machine, the latter being on an axle upon which are two band wheels still further to the left, the turning of one of which puts the mangle cylinders in motion, and the turning of the other band wheel is loose on the axle, and therefore the machinery is not put in motion by it. These two band wheels have exactly the same band surface and faces, and are placed as near to each other as can be, so that one may turn and the other stand still. The band that turns these wheels is connected with the steam motive power elsewhere situated. When it is desired to put the machine in motion, by pressing a treadle the band is thrown upon one of the band wheels, called the tight wheel, that is

tight on the axle, and when it is desired to stop the mangle rollers, by a similar process, the band is thrown to the loose wheel, or the one that does not turn the axle, but turns on it. The middle roller is raised or lowered by a screw near one end of the machine. The middle roller is a large cylinder, and, when in effective use, is heated to a high degree. The apron in front, according to one witness, was a little higher than the knees of a person standing by it. We judge, from the testimony elsewhere, that it is somewhat higher than this. The witness states that, in dressing the mangle rollers, one would have to tip-toe, that is, reach forward over the apron. The table in the rear is considerably higher than the apron, and seems to be a sort of box or trough, rather than a table.

A man named John Kinsel, at the time of the injury, was a stationary engineer, and in charge of all the machinery in the Park Hotel. It was his business to "fix the machinery," and, we take it, it was his business to superintend and control the operation of all the machinery, and keep the same in proper running order. A Mrs. Marceau was in immediate control of the work at the mangle and the laborers working there. These laborers seemed to have been women and girls, such as the plaintiff, who, at the time she was injured, was about 17 years old (probably younger), and was getting $15 per month wages and her board and lodging.

It seems that, without any orders to do so, or any special warning not to do so, these girls were in the habit of getting upon the apron to dress the mangle rollers. This was the position of the plaintiff when she was injured, and she had been working about the mangle eleven days, but it is not shown that she had ever dressed a mangle before, unless we reach that conclusion by mere inference. As to the manner in which the injury was received, we cannot better explain it than

quote the testimony of the plaintiff as copied in her abstract, to-wit : "Mattie and Annie went on the trough side, and I went on the apron side. I got upon the apron on my knees. I had always seen the others do this when undressing it, and it was a better place than the floor, because the apron was between you and the mangle when standing on the floor, and you could not get at the top roller so well. We had taken off the cloths, and I was leaning over and smoothing the wrinkles out of the blanket on the top roller and getting it ready to put on the fresh mangle cloth, when the mangle suddenly started and caught the fingers of my left hand between the rollers, and drew the hand down in between them. I screamed. Annie Kelley stopped the mangle, and Mr. Kinsel turned it back so I could get my hand out. My fingers were all mashed and burnt. I suffered a great deal. Cannot tell how much. That can be better imagined than expressed. The first notice I had of the mangle being in motion was when it caught my fingers. It started of itself. The band was on the loose pulley when we started to dress it. None of us shifted it back to the tight pulley, or at least I did not, and I was the only one on the side where the treadle that shifted it was. I did not know that the band would shift of itself, or that the mangle would start involuntarily, or that it was not level."

The contention of the plaintiff is that defendant was negligent in not keeping the machine in proper repair, in this that it was permitted to get out of level, the pulley end being considerably lower than the other end ; and that the effect of this was to cause the motive power band to slide of itself from the loose to the tight pulley, and thus put the mangle rollers in motion ; that she was ignorant of this condition of the machine, and therefore the starting of the roller in this instance was without warning to her, and resulted in catching her hand be-

tween the upper and the lower, middle and heated roller, while she was arranging the cloths on the former as she was required to do, and her hand was crushed and burned so as to render it practically useless and permanently so. The plaintiff disclaims all acts on her part, or all knowledge of acts on the part of others, which may have put the machine in motion, there being but one other way than that alleged in which the same could have been done—the pressing upon the treadle.

The contention of the defendant is, in the first place, that the machine was in good order and not out of level, and, secondly, if it were as claimed by plaintiff, the results alleged by her would not have been. For instance, had the pulley end of the machine been the lower, the inclination of the band would have been to go from the tight to the loose pulley or wheel instead of from the loose to the tight wheel. Their respective theories are sustained by their respective witnesses. A further contention of the defendant is that since, in taking the old cloths from the roller, it is next to impossible to do so without tearing the cloths unless the middle cylinder is lowered some inches by the hand screw, and since this seems not to have been done, and without it the hand could not have been injured, it follows that the plaintiff contributed in this way, as well as in other ways, to her own hurt. In response to this, the plaintiff shows that, in putting in new cloths, it can be done best by closing up the cylinder, and in doing this latter thing she was hurt. This, at least, is, as we understand it, the controversy in this proceeding.

The evidence on this as well as on the other allegation of negligence on the one hand, and contributing negligence on the other, is conflicting, and in many respects utterly conflicting. The verdict of the jury ought not to be disturbed, unless they were improperly

instructed, and to such an extent as that their verdict may be the result of misdirection.

*Rose, Hemingway & Rose* and *C. V. Teague* for appellant.

1.   The court erred in giving the second instruction for plaintiff, and in refusing the fifth and fourteenth for defendant.   The error was in defining the duty defendant owed plaintiff, and in defining negligence in that regard.   There are two material errors in the first sentence prejudicial to defendant:  First, that its duty was to *control* the machine; and, second, that it was bound to keep the machine in a reasonably safe condition.   The idea underlying these propositions is wrong. It requires the defendant to maintain actual conditions, to accomplish actual results, while the law requires prudent and careful conduct.   The court made *actual conditions the test* of defendant's liability; the law makes *its conduct the test*.   And as bad conditions may exist or arise in spite of the most careful conduct, it is evident that the application of a wrong test was prejudicial.   The second sentence of the instruction repeats and aggravates this error.   It is in effect that unless plaintiff was guilty of contributory negligence, she would be entitled to recover if her injury was caused by a defect in the machine.   Whether the defect existed in spite of defendant's care and caution is made immaterial; whether it could have been prevented or remedied by the exercise of proper care is likewise immaterial; whether defendant knew of it, or could have known of it, cuts no figure.   The fact of a defect is made conclusive of negligence.   As opposed to this view of the law, the defendant asked the court to charge in effect as follows: By its fifth instruction, that the defendant did not guaranty to plaintiff immunity from injury, but was bound only to use ordinary and reasonable care in providing safe machinery and appliances for her to work with;

and, by the fourteenth instruction, that if the plaintiff's injury was caused by a defect in the machinery, she could not recover unless defendant knew, or, by the exercise of reasonable care, could have known, of such defect. Now, there is nothing in any text book or adjudged case, of which we have any knowledge, to support the instruction given; but the instructions refused are supported by a uniform current of authorities. The master is not bound absolutely to furnish machinery and appliances that are reasonably safe, or that are safe at all; he is bound to exercise reasonable and ordinary care to furnish such appliances, and, if he exercise such care, but in spite of it the machinery becomes uncontrollable or very dangerous while being used, he is guilty of no negligence. The existence of a defect in the machinery or appliances used is not conclusive of negligence; on the contrary it is entirely consistent with due care, and must be so as long as employers are not endowed with omniscience and omnipotence. 35 Ark. 614; 44 *id.* 529; 46 *id.* 567; 48 *id.* 474; 51 *id.* 479; 54 *id.* 393; 56 *id.* 213. In 53 Ark. 458 an instruction in much the same language was given. The judgment was affirmed on appeal, but the instruction was not approved. See 56 Ark. 236. The continued use of machinery with known defects is not necessarily negligence. 35 Ark. 615; 56 *id.* 210.

2. The plaintiff's third instruction misstated the law. 56 Ark. 322; 105 N. Y. 26; 16 Atl. 737; 57 Mich. 182.

*Martin & Murphy* for appellee.

1. Taken altogether, the instructions state the law correctly. Even if parts of the second and fifth *might* be tortured into stating a wrong *theory*, all objections are cured by the seventh, third, ninth and thirteenth. If there was error, therefore, in one or more of them, it

would be unavailing.    32 Ark. 225; 21 *id.* 361; 17 *id.* 326; 9 *id.* 218.

2.    The law of this case is well settled.    27 N. E. 675; 53 Ark. 458; 144 U. S. 417; 48 Ark. 344–347; 53 *id.* 350; 57 *id.* 383.

3.    The appellant was liable for the negligence of Mrs. Marceau.   She was a vice-principal.   44 Ark. 524; 54 *id.* 289.

4.    The evidence is ample to support the verdict.

BUNN, C. J., (after stating the facts.)   The gravamen of the complaint in this action, as in all actions of the kind, is that, by reason of the negligence of the master, the servant has suffered injuries for which damages are sought.   This necessarily demands an inquiry into the relation of master and servant, and as to the mutual obligations and duties, growing out of that relation, which they owe to each other.

There does not seem to be any real controversy in this case as to the character and quality of the "mangle," the machine at which the plaintiff, as an employee of the defendant company, was called upon to work in the course of her employment.   Therefore the duties and obligations which the law imposes upon the defendant in respect to the plaintiff may be the more briefly stated thus:  "It was its duty to exercise ordinary care in keeping the machine in reasonably good condition and repair, so that the dangers attendant upon working with it (if there were any) would not be increased unnecessarily."   The plaintiff, on the other hand, "assumed all the risks naturally attendant upon the employment and incident to the work she was engaged to perform."   The defendant was under obligations to use ordinary care and diligence in discovering latent defects in the machine, or in its position; and while this duty was not imposed upon the plaintiff, yet both were under obligations to observe patent defects, and give notice of

the same—the servant, that the master might remedy the defect ; and the master, that the servant might thereby be the better protected. Extraordinary care is required of neither of them. All that may be said as to the degree of care to be exercised by the master, for instance, is that he should exercise ordinary care, and that only is he required to exercise, although it is said that ordinary care in one case may not be ordinary care in another. In general, then, ordinary care is that care which a prudent man usually exercises in the conduct of his own affairs, to be determined by the circumstances of each case. *Vinton* v. *Schwab*, 32 Vt. 614 ; *Mich. Cent. R. Co.* v. *Coleman*, 28 Mich. 449.

The principal objection of the defendant to the instructions given by the court below is to the second instruction given at the instance of the plaintiff, which seeks to define the relation existing between the parties, and the duties the one owes to the other, and lays down the rule by which the jury was to be governed in determining whether or not the charge of negligence was well founded, and thus a recovery might or might not be warranted. The instruction complained of is as follows, to-wit : "You are instructed that if the Park Hotel Company employed the plaintiff to work for it in its laundry, it assumed the duty to control its mangle in said laundry, and keep it, while she was at work at it, in a reasonably safe condition, so as not to unnecessarily enhance the dangers attendant upon the employment. That she assumed the natural risks of her employment, but did not assume risks arising from any negligence of the hotel company, if you find there was such in constructing defective machinery ; and if the plaintiff received any injury caused by the defective condition of the machinery at which she was put to work, she is entitled to recover, unless the injury was the result of the contributory negligence of the plaintiff; and, upon the question of con-

tributory negligence, you are instructed that a servant or employee is not required to inspect the appurtenances of the business in which she is employed to see whether or not there are latent defects that render their use more ·than ordinarily hazardous, but is only required to take notice of such defects or hazards as are obvious to the senses.  The fact that she might have known of defects, if you find there were any, or that she had the means and opportunity of knowing of them, will not preclude her from recovery, unless she did in fact know of the defect, or in the exercise of ordinary care ought to have known of it.  She was not bound to make an examination to find defects, but it was the duty of the Park Hotel Company to use ordinary care in finding them.  She had the right to rely upon the judgment and discretion of the Park Hotel Company to provide her with machinery to work with that would not unnecessarily enhance the dangers attendant upon her employment."

Much of this instruction, and we might say most of it, is abstractly correct, but it is the enunciation of a theory, especially in the first part of it, which may be the right one or the wrong one, accordingly as we construe its language.  It will be observed that the jury were told that the defendant assumed the duty to control its "mangle" in its laundry, in the very act of employing the plaintiff to work for it in its laundry.  That may have been, and doubtless was, a fact, but it was not the business of the court to declare to the jury what the facts were.  There may be instances of such employment where the servant, and not the master, assumes control of the machinery.  Besides, the word "control" is a broad term to use in such a connection. It may have meant, to the mind of the jury, that the defendant, by reason of this control, was to be held absolutely responsible for all defects that might arise in the

course of the plaintiff's work at the machine. The master is not supposed to be always present, either personally or otherwise, and therefore the assumption of absolute duty to keep the machine in even a reasonably safe condition is not the burden the law imposes upon the master in such cases.

The defendant complained that by these instructions the court made actual conditions the test of defendant's liability, while the law makes its conduct the test; reasoning therefrom that, as bad conditions may exist or arise in spite of the most careful conduct, it follows that defendant was subjected to a false test, and thus deprived of a trial according to law. The master, says Mr. Wood, in his work on Master and Servant, section 329, "is not only bound, in the first instance, to use reasonable care in the selection of machinery and appliances, but also to exercise reasonable and proper watchfulness to see that it is kept in proper condition." Again, the same author says: "The measure of the master's duty is reasonable care, and this necessarily has relation to the parties, the business in which they are engaged, and varies according to the exigencies which require vigilance and attention, conforming in amount and degree to the circumstances under which it is to be exerted." Mr. Bailey, in his work on Master's Liability for Injuries to Servants (pages 2–4), says: "A master is liable in damages, ordinarily, to his servant who is injured through the master's failure of duty towards him; negligence being nothing more nor less than a failure of duty. Among the implied obligations resting upon the master are that he shall provide suitable means and appliances to enable the servant to do his work as safely as the hazards incident to the employment will permit, etc." And, continuing, he says: "In the performance of these duties, the master is bound to the exercise of reasonable and ordinary care, and such

only.   The degree of care required in each of these particulars is the same.   The authorities are all agreed that the degree required to be exercised is that of ordinary care."

Such is the doctrine of this court, uniformly expressed in all cases wherein the particular question has arisen, and where it has become necessary to particularly state the law.   Thus in *St. L. etc. Ry. Co.* v. *Harper*, 44 Ark. 524; *L. R. etc. Ry. Co.* v. *Duffey*, 35 Ark. 602; *Bauer* v. *St. L. etc. Ry. Co.* 46 Ark. 388; *St. L. etc. Ry. Co.* v. *Gaines*, 46 Ark. 555; *Emma Cotton Seed Oil Co.* v. *Hale*, 56 Ark. 232.   It has also been uniformly held by this court that a servant cannot recover of the master for an injury which the servant by reasonable care and attention could have prevented.   In *L. R. etc. Ry. Co.* v. *Leverett*, 48 Ark. 344, an instruction very much like the one now under consideration was given at the instance of the plaintiff.   Another, in some sense explaining or qualifying the first, was also given, and the court said:   "Construing these instructions together, appellant was not prejudiced by any of them."   This language, when taken by itself, may be construed as an approval of the instruction in this case, which is almost identical in language with the one in that case, but it must be remembered that in that case there was little or no controversy as to the condition of the road-bed, for that was virtually admitted to be bad; but the controversy was as to the deceased's waiver of defendant's obligation to him by his acceptance of the employment with full knowledge of the condition of the place he was to work in.   The instruction on this latter point was unobjectionable.   Hence it was that the court, in that particular state of case, could say the appellant was not prejudiced by these instructions when taken together.   Certainly such language in such a connection could not mean that the first instruction was correct.   It had

rather the contrary meaning, for it was as if the court had said: "It is erroneous when standing alone, but, taken in its connection, and under the circumstances, it is tolerated, since, notwithstanding its errors, it does no harm." To substantiate this construction of the meaning of the court in that case, we have only to repeat what the court said immediately after in that connection: "In employing the deceased, the appellant assumed the duty of exercising reasonable care and prudence to provide him a safe place and tools to exercise the employment, and to maintain the place and tools in a reasonably safe condition." The same may be said of the language of the court in *St. Louis etc. Railway* v. *Higgins*, 53 Ark. 458. So, then, it is the conduct of the master that is the subject of the jury's inquiry, and not the condition of the appliance with which the servant is employed to work; and the conduct of the master that will exonerate him from the charge of negligence is his exercise of mere ordinary care in respect to the use and keeping in repair of the appliance.

The instruction in question propounds another and radically different theory. It, in effect, directs the jury to find whether or not the appliance was in a reasonably safe condition at the time of the injury, and, if not, to find for plaintiff. What might have been a reasonably safe condition in the estimation of the jury is a question incapable of solution, and can never be answered, simply because the jury had no standard by which to determine such a fact, and were without power to fix one for themselves, and the court was as powerless to suggest one to them. The condition of the machine was an evidentiary fact merely, and one that was only serviceable in determining the ultimate fact—the care exercised on the part of the defendant.

Presumably, from their verdict, the jury found that the machine was not in a reasonably safe condition, but

whether they found that the defendant had failed to exercise ordinary care and diligence, or had not exercised the highest degree of care known in the conduct of human affairs, and thus inflicted the injury complained of, does not appear.    This exercise of, or failure to exercise, the proper degree of care, however, is the very thing that should appear as the result of their findings, and the reason why it does not so appear is that they were not instructed that such was the real and essential object of their inquiry.

Seemingly, appreciating the force of the appellant's complaint against this instruction, the appellee contends that the error, if any, is remedied by the latter part of her fifth instruction.    This seems to us however to possess the same vice as the first instruction, for it simply defines the duty of the vice-principal to be to maintain the machine in such a condition as not to incur the dangers incident to its operation, leaving out the idea that it was her duty, as a vice-principal, to exercise ordinary care only to keep it in proper condition.

It is also contended by the appellee that the error complained of is cured by directions in her seventh instruction.    The jury in this seventh instruction were told that "if they believed from the evidence that appellant permitted the mangle to be out of level, and caused it to be operated in that condition, when they knew, or should have reasonably known, from circumstances within their knowledge, that such condition endangered their employees who were at work at it, and the rollers of the mangle, by reason of that condition, started in motion, caught her hand before she could withdraw it, and inflicted the injury complained, the appellant was liable."    Now, whether the jury construed the court to mean, by this instruction, that it was a fact that the condition of the machine was the proximate and efficient

cause of the injury, or only that if they should so find, they might find so and so, we are unable to guess from the language of the instruction itself. Being doubtful as to its real meaning, the instruction is misleading in that particular, and of course falls far short of being so perfect as to remedy the defects of another erroneous one.

The third instruction given on behalf of the defendant, and referred to by appellee as calculated to cure the error complained of, we may say states the law, but what effect it could have in neutralizing the effect of a radical defect, such as is complained of, we cannot say, and this may be said also of the ninth and thirteenth, given at the instance of the defendant and appealed to by appellee in the same connection.

The refusal of the court to give the second, fifth and fourteenth instructions asked by defendant, has the effect of emphasizing the error we have endeavored to point out.

The ruling of this court in *Emma Cotton Seed Oil Co.* v. *Hale*, 56 Ark. 232, furnishes an easily understood guide to instruct the jury as to the duties a master owes to an inexperienced minor employed to work for him; and so does the case of *Bloyd* v. *Railway Co.* 58 Ark. 66, as to what constitutes a vice-principal; and while it is true that, to establish the fact of contributory negligence as a defense, the burden of proof is on the defendant, yet it must be understood, and so explained in every case, that this fact may appear as well from the testimony on the part of plaintiff as on the part of defendant.

Some of the questions discussed will probably not arise in another trial, and others we have not noticed because we find no error in the trial court's disposal of them. Upon the whole case, without saying more, we think the instructions were misleading, and that a new trial is proper.

Reversed and remanded.