HOWARD, Respondent, vs. BELDENVILLE LUMBER COMPANY, Appellant.

*May 10—June 21, 1906.*

(1) *Jurors: Examination: Interest in casualty insurance company.* (2) *Evidence: Rebuttal: Discretion.* (3) *Instructions: Failure to define "burden of proof."* (4–7, 9) *Special verdict: When taken: Form of questions: Negligence: Proximate cause.* (11) *General instructions.* (8–10, 13) *Master and servant: Personal injuries: Dangerous place: Negligence of co-employee: Court and jury.* (12, 14) *Damages. Future suffering: Permanent injury.*

1. In an action for personal injuries plaintiff's attorney may examine jurors as to their interest in any casualty insurance company as a basis for challenges; but this should be done only in the ordinary way, by proper questions to the jurors, and not as if anything of a peculiar nature were involved therein. No foundation need be laid for such examination, and it is not necessary or proper to require defendant's attorney or his nonprofessional assistant to submit to a private examination as to whether he represents any such insurance company concerned in the action.

2. The trial court has a wide discretion as to whether, after both parties have rested their cases in chief, further evidence shall be confined to such as is strictly rebuttal.

Howard v. Beldenville Lumber Co. 129 Wis. 98.

3. Failure to instruct the jury as to the meaning of the term "burden of proof" is not error where there was no request for such instruction.

4. Under sec. 2858, Stats. 1898, the court may submit the case for special verdict without request of counsel.

5. A special verdict should be composed only of a sufficient number of questions to cover singly the material issues controverted on the evidence, and should be so worded that each question, so far as practicable, shall be susceptible of affirmative or negative answer.

6. The submission in this case of the general question "Was the defendant guilty of negligence which caused plaintiff's injury?" is criticised as involving several questions, which should have been separately submitted, as to the existence of the alleged defect and as to whether defendant had known or been chargeable with knowledge thereof for such a length of time that failure to repair it before the accident was negligence.

7. The submission of four questions as to proximate cause is also criticised on the ground that one, properly worded, would have sufficed, and also because said questions included immaterial matters and matters not in issue and were so framed as to cross-question the jury.

8. In an action for injuries to an employee in a sawmill, alleged to have been caused by a piece of wood falling upon him through a hole which the employer had negligently permitted to remain in the floor above, the fact that negligence of a co-employee combined with that of the employer to cause the injury is not a defense.

9. A general question in the special verdict as to whether plaintiff was guilty of contributory negligence is *held* sufficiently to have covered the question of his assumption of the risk, in the absence of any request for a specific submission of that matter.

10. A reasonably safe working place being furnished to a servant when he is put to work, the master's absolute duty in that regard is satisfied. If thereafter the place becomes unsafe and the servant is injured by reason thereof before the master has knowledge, or reasonable opportunity to obtain knowledge, of the danger and reasonable opportunity to remove it, the master is not liable.

11. Where a case is submitted for a special verdict it is error to give general instructions.

12. In the assessment of damages for future suffering, mental and physical, the jury should be limited by the instructions to such loss in that regard as the evidence satisfies them will be reasonably certain to result from the injury.

13. The question whether plaintiff, an employee in a sawmill, was injured in the manner alleged, by his hand being caught between the belt and rim of a pulley, is *held* upon the evidence to have been one for the jury. MARSHALL, J., dissents.

14. For injuries to a man thirty-one years old, capable of earning $2.50 to $3 per day, resulting in permanent partial paralysis of his right shoulder and that part of the arm near it and total paralysis of the rest of the arm, an award of $8,000 is *held* not fatally excessive.

APPEAL from a judgment of the circuit court for Rusk county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action for personal injuries.

The claim in the complaint was this: September 2, 1904, plaintiff was an employee of defendant in the latter's sawmill at Bruce, Wisconsin. The machinery on the main floor of such mill consisted in part of a slab saw which was attended by one person when the mill was operating. Beneath such saw and extending down to within about two feet of the ground floor there was a box construction for directing the sawdust from such saw to a conveyor running horizontally, nearly, with such floor and about a foot above the same. Passing through the box several feet above such floor there was a shaft, equipped with a pulley, the upper part of which was some feet from the main floor and the lower part some four feet from the ground floor. This pulley was the driver for the slab saw, power being transmitted thereto by a belt. To examine the pulley and belt, as was necessary from time to time, one was required to remove a piece of the box which was fitted for that purpose. In the main floor over where one would necessarily stand in removing the door, so called, of the box so as to expose to view the pulley and belt there was a hole of sufficient size to permit of pieces of wood dropping through and striking whoever might be in their course. The hole was caused by wear. The work on such floor and the location of the person having charge of the slab saw were such that pieces of wood were quite likely to be pushed over the

brink of the hole.    This condition of things was well known
to the defendant prior to the occurrence hereafter mentioned.
The plaintiff had no knowledge thereof before such occur-
rence.  On said 2d day of September, 1904, at about 4 o'clock
in the morning while plaintiff, with due care, was performing
his duty to examine the pulley and belt, the door of the box
having been removed for that purpose, and he was standing
with his right hand resting against the box, with his body some-
what bent over to the left, in the act of looking up into the box,
he was struck on the right arm by a piece of wood which came
through the hole aforesaid, loosening his hand from the box
and causing him to fall forward and to make an involuntary
movement of such hand to catch himself, whereby such hand
or the arm was caught between the belt and pulley and carried
down and around the latter, breaking his shoulder and arm,
causing him much pain, and permanently disabling him.
He was thirty-one years of age when the injury was occa-
sioned.    He was in good health and capable of earning $2.50
a day.    He has been damaged as a result of his injuries in
the sum of $25,000, besides necessary expenses for surgical
and medical attendance of $100.

All allegations as to negligence on the part of the defend-
ant were put in issue by the answer.    Also all allegations as
to the manner in which plaintiff received his injury and as
to the amount of his damages.

During the impaneling of the jury plaintiff's attorney
claimed the right to interrogate each juror as to whether he
was connected in any way with any accident or casualty com-
pany, saying that he understood defendant's attorney repre-
sented such a company in the action.    Exception to such re-
mark was taken by defendant's attorney, he at the same time
asserting that he knew of no accident or casualty company be-
ing interested in the case and that he represented the defend-
ant only.    Plaintiff's attorney persisted and requested to have
defendant's attorney sworn and examined on the subject.

The request was refused, but the court interrogated each juror at length as to whether he was connected with any such insurance company either as a stockholder or policy-holder or as an insurer of his employees or in any other manner. Defendant objected to the examination and duly saved exceptions in respect thereto. After the close of the evidence the court, counsel on both sides, and a Mr. Prince, who was present, apparently associated with the attorney for defendant in some capacity other than that of an attorney, withdrew from the presence of the jury, and the judge then, against the protest of defendant's counsel, required said Prince to submit to an examination under oath as to whether he represented any accident or casualty company interested in the cause. He testified that he was the adjuster for the Ocean Accident & Guaranty Corporation, and that he supposed the defendant company was paying the expenses of the litigation, but that he had no personal knowledge of the matter or as to whether the insurance company had a policy covering the accident in question; that his company sometimes attended to litigation of that sort where it was not directly interested because of having a policy covering the case.

The proof offered to support the plaintiff's claim was in substance this: There was a slab saw on the main mill floor, the sawdust from which was disposed of by passing down through a box underneath the saw to a conveyor near the ground floor. Through this box there was a shaft on which there was a pulley connected with the slab saw as alleged in the complaint. The business of plaintiff was to look after the machinery on the ground floor during the night shift. That required him, from time to time, to examine the condition of such pulley and belt. In doing so he was required to approach the box, step up on an eight-inch timber lying horizontally on the floor between two bridge-tree timbers standing upright thereon some two or three feet apart and remove the door of the sawdust box, which door was about three feet

Howard v. Beldenville Lumber Co. 129 Wis. 98.

long. That being done, and the operative standing upright between the bridge trees and the mill being in operation, the situation was like this: The pulley was twenty-four inches in diameter. Its motion was outward from the upper side. The speed was about 600 revolutions per minute. The belt was about eight inches wide. The top of the operative's head was about one foot above the top of the pulley. The outer rim of the pulley reached to within about fifteen inches of his body and to within about five inches of the outside of the box, and it filled the box from right to left except about three inches on each side. Some two weeks before the accident a new belt was put on because the old one did not run true. The new one was accustomed to run from side to side, somewhat, and to keep it in place a piece of wood was nailed in the box about seven feet from the bottom thereof on the right-hand side. A few moments before the accident plaintiff finished repairing a belt by which power was transmitted to some machinery on the main floor. Having done so and cleaned up the dirt occasioned thereby he proceeded to look after the belt in the box. He stepped upon the eight-inch timber aforesaid and removed the outside of the box, setting it aside. He then placed his hand on the box at the top of the opening, somewhat to the right, and leaned to the left, turning his head upward sufficiently to enable him to look up into the box where the guide aforesaid was located. While he was in the act of so looking, a piece of wood about eight inches long and two inches square came from above, striking his arm and glancing off to and striking his face. Instantly thereupon his hand was released from the box and he fell forward, the motion of his arm being such that it or the hand was caught between the pulley and the belt and whirled around the former till it was released. As his hand and arm were so carried partly around the pulley his body with great force was jerked forward against the outside of the box, his face striking the left-hand edge thereof, and his arm was twisted and broken and so strained as to per-

manently destroy its usefulness.  On occasions prior to the injury when he had opened the box and examined the belt and pulley he had not observed any hole in the floor above.  There was such a hole, the same being where the person who tended the slab saw was required to stand.  It was about ten inches square.  When the stick of wood fell to the floor he looked at it and so was able to tell about its size.  He also looked up to see where it came from and observed the hole.  He could not say just how his hand or arm was caught or released, but thought the hand came down on top of the pulley and went around to the place where it was released by the belt leaving the pulley.  The hand was injured somewhat.  It went in and out very quickly.  He said:

"I should judge that it [the hand] passed down and away from me up to where the belt left the pulley on the farther side.  I don't know for certain whether my hand went clear around or not, or whether it slipped out before it got clear around.  I know there was a mark on the back of my hand where it was skinned."

As corroboration the person who operated the slab saw testified to there being a hole in the floor through which a piece of wood might have fallen and struck the plaintiff.  He said the hole was caused by a wearing out of the floor; that it had been there some time; that he had to exercise care to avoid stepping into it; that several times he had called attention thereto in order to have it fixed, and that he was accustomed to cover it with loose lumber or slabs.  Plaintiff testified that he walked around some, outside of the mill, after he was injured; that after a while he met one of the employees, who took him into the engine room, where he soon became unconscious, and in that condition was taken home. He did not say to any one before being taken from the mill or thereafter, except as hereafter indicated, that he was injured while examining the belt in the box, until he made such claim in the action. He testified that he never told any person connected with de-

fendant how he was injured. He admitted having said to one of defendant's officers that there was a belt off; that it took him quite a while to put it on because he had to lace it; that after he did that he walked into the engine room and then out and around and just then got hurt.

On behalf of defendant there was evidence to the effect that about three months after the accident plaintiff and his wife signed a written statement that the injury was caused while he was attempting to put on a belt; that his arm was caught thereby, throwing him to the floor, and that he could not tell just how it was done. They testified that a man visited them and discussed the question of their expenses and appeared to write down what they said in that regard; that they read the paper; that the man then laid it with others on the table and asked them to sign, which they did, supposing they were signing the paper they had read; that they made no such statement to the man as the one contained in the paper in fact signed and produced upon the trial. There was testimony by the secretary and treasurer of the defendant that some two weeks after the accident plaintiff visited defendant's office and there said he did not know how the accident occurred; that he did not blame any one; that he fixed a belt, then went over by the box and was injured there. Mr. Stewart, the foreman of the mill, testified that before the plaintiff was taken from the mill he said he did not know how he was injured, and later at his home, when he was apparently in good condition to relate the facts, that he said he could not tell the first thing about the matter. The witness further testified that it was the spring after the injury before he knew of any claim that the injury occurred at the box under the slab saw; that he went into the basement of the mill after the accident and found no indication of there having been any disturbance there except that the belt was off of the big conveyor some thirty feet from the slab-saw box. The defendant's bookkeeper, who was present when the

plaintiff made the statement to the president in the office,. corroborated it. The person who had the same work to do as plaintiff on the day shift testified that when he came on, after the accident, he found everything in order on the ground floor; that about a month after the accident plaintiff told him he did not know how he got hurt; that the witness often took off the door of the box under the slab saw and examined the operation of the belt, looking up as plaintiff testified he did, but never observed any hole in the floor above.

Plaintiff on rebuttal denied in detail the testimony of each of the witnesses as regards his having said he did not know how his injury occurred.

At the close of the evidence the defendant moved the court for a verdict which was denied. The court then sent the case to the jury for a special verdict on its own motion. There were exceptions to instructions given and refused,. which will be referred to, as far as. may be necessary, in the opinion. The jurors found as facts, in substance:

1. Plaintiff was injured while on duty in defendant's mill. by contact with the machinery therein.

2. Plaintiff was injured by negligence which was the proximate cause of such injury.

3. Such injury was not produced by negligence of a co-employee.

4. Defendant's alleged negligence was the proximate cause of the injury.

5. The injury was not caused by concurrent negligence· of defendant and the fellow-servant of the plaintiff.

6. Plaintiff was not guilty of any contributory negligence.

7. Eight thousand dollars will be required to compensate plaintiff for his injury.

Such motions were made and exceptions saved to rulings. thereon as were necessary to preserve for consideration questions discussed in the opinion. Judgment was rendered in. plaintiff's favor on the verdict, and defendant appealed.

For the appellant there was a brief by *Morton Barrows* and *L. E. McGill,* and oral argument by *Mr. Barrows* and *Mr. S. L. Perrin.*

For the respondent there was a brief by *Samuel A. Anderson* and *W. H. Stafford,* and oral argument by *Mr. Anderson.*

MARSHALL, J.   The proceedings which occurred during the impaneling of the jury and at the close of the evidence, in regard to whether any casualty insurance company was interested in the litigation, merit criticism.   Whether, under the circumstances, they should be regarded, of themselves, as prejudicially erroneous, is questionable and need not be decided.   It may be otherwise, though, if so, they come very dangerously near that line.

Very much of the criticism, indulged in as to a tendency of jurors in cases of this sort of deciding issues from biased views, suggests rather faulty administration than inherent weakness in the jury system.   It is firmly believed that by careful attention, from the beginning to the end of a jury trial, to protect the jury from all ulterior influences and to carefully avoid useless colloquies between court and counsel having a suggestive tendency as to the nonprofessional hearers, regarding the mental leanings of the court either as regards the particular case or similar controversies, and such attention by manner and speech, so far as practicable, to persuade the jury up to the ideal plane of absolute impartiality necessary to a decision of the controversy in hand, entirely uninfluenced by anything except the evidence produced before them and the law as given by the court, the results will continue in the future, as in the past, to vindicate the truth of the saying that the safest tribunal that has been or probably can be created to decide mere issues of fact, is a carefully impaneled jury of twelve men.   From our own experience as trial judges, we are utterly unable to appreciate

the frequent suggestions made that a defendant in a case of this sort, or one where an insurance company defends, cannot, by reason of inherent weakness in the system, obtain justice at the hands of a jury.

The difficulty with the criticised proceedings is attributable to the attitude of all concerned in examining the jury on the *voir dire*. Counsel for plaintiff said:

"I don't know if this is the proper time and place to mention anything with reference to the fact of a casualty insurance company being interested in this case."

That was the initial mistake. There was no necessity for mentioning any such thing to the court or in the presence of the court other than by proper questions propounded to jurors. That first mistake was followed by a long colloquy between court and counsel, on both sides, as to the propriety of examining the jury respecting whether they were interested in any casualty company concerned in the litigation and as to whether the attorney who appeared for the defendant represented such a company, during which plaintiff's attorney was accused by defendant's attorney of endeavoring to prejudice the jury, and the latter, protesting innocence in that regard, asked leave to examine under oath defendant's attorney as well as a Mr. Prince, who appeared to be the latter's nonprofessional assistant, on the subject of discussion, ending with a suggestion by the judge that he would inquire into that later, and then himself taking up the matter of examining the jurors on such subject, which he did fully. Such proceedings, manifestly, are not well calculated to promote the attainment of justice. Just as clearly they have a tendency to create impressions in the minds of jurors prejudicial to the proper consideration of the case in hand.

If counsel for plaintiff had proceeded, without any announcement to the court, to ask the jurors as to whether they were directly or indirectly concerned in any casualty insurance company, as a basis, if one existed, for challenges to the

favor or peremptory challenges, he would have been strictly
within his right. There was no more necessity for the sup-
posed preliminaries than there would be for a foundation
for interrogating a juror as to whether he is a relative of any
party to the litigation, or to either of the attorneys engaged
therein, or interested directly or indirectly with any such
party or attorney in business, or with reference to any other
of numerous matters that might be suggested. It was the
announcement by counsel, as if something of a peculiar
nature was involved in the examination he proposed entering
upon, the attitude of the court with reference thereto and the
whole proceedings, suggestive of such matter being specially
out of the ordinary, and of the existence of a secret interest
behind the litigation, putting the defendant in the position
of falsely and secretly pretending to be the real party in
interest—which was liable to work mischief. Quite similar
proceedings took place in *Chybowski v. Bucyrus Co.* 127
Wis. 332, 106 N. W. 833. There counsel for defendant was
required by the court to disclose under oath whether he rep-
resented an insurance company concerned in the litigation.
That was condemned, it being said:

"The mere fact that an insurance company was concerned
in the litigation was wholly immaterial. The attitude of
the court as to compelling appellant's counsel to bear evi-
dence in respect thereto, notwithstanding the assurance of
respondent's counsel that the information sought for was
wanted only as a basis for interrogating the jury, clearly gave
undue importance to the insurance company's connection
with the case, since no such basis was necessary. It was a
matter quite likely to prejudice the jury and should not have
been adverted to at all except by questions to the particular
juror under examination and 'strictly within the right' to
discover whether any bias or basis therefor on his part ex-
isted."

The procedure in this case did not go quite so far, in the
presence of the jury, as in the one quoted from, so we feel

justified, here, in stopping short of condemning the same as sufficiently prejudicial, by itself, to work a reversal. Why the proceedings were taken, which occurred after the close of the evidence, of counsel and the court retiring from the presence of the jury and requiring the nonprofessional assistant of appellant's counsel to be sworn and examined as to whether he represented any casualty insurance company concerned in the litigation, we are wholly unable to understand. Certainly, if they had to occur, the trial court is to be commended for having retired for the time being from the presence of the jury. It seems that the mainspring of the several steps, including the last, was the notion that some basis for the examination of the jurors on the particular subject was necessary to be affirmatively laid, including some showing of good faith on the part of counsel for the plaintiff. That was all wrong. No such basis was required, as before indicated, any more for the purpose of inquiring into such particular matter than for inquiring into any other, necessary, in the judgment of counsel, acting reasonably, to enable him to perform his professional duty in selecting a jury. He should have simply asked fair questions in regard to the subject, and in case of an objection being made it should have been promptly overruled. . This subject has been sufficiently treated here in *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049, and *Chybowski v. Bucyrus Co.* 127 Wis. 332, to warrant omitting to pursue it further. We have discussed the same at considerable length because it seems, from this and the two other instances where we have recently been called upon to deal with the subject, that some pretty definite statement as to the proper conduct of judicial administration in respect to the matter is required.

Complaint is made that evidence was permitted on rebuttal which was really cumulative. Courts have a pretty wide discretion as to whether after a party has rested in chief and the opposite party shall have made his case the former shall

be restricted, as to further evidence, to such as is strictly rebuttal. The better practice is to direct the trial along the lines of regular order unless there is a fairly good reason for departing therefrom. We are unable to say that there was any inexcusable departure from such order in this case.

Further complaint is made because the court failed to instruct the jury as to the meaning of the term *burden of proof*. There does not seem to have been any request for instructions on that line, therefore harmful error cannot be predicated on failure to do so. *Seyring v. Eschweiler,* 85 Wis. 117, 55 N. W. 164; *Lueck v. Heisler,* 87 Wis. 644, 58 N. W. 1101; *Koch v. Ashland,* 88 Wis. 603, 60 N. W. 990; *Odette v. State,* 90 Wis. 258, 62 N. W. 1054. No error was committed by submitting the case to the jury for a special verdict without request by counsel. The statute expressly authorizes such submissions. Sec. 2858, Stats. 1898.

Several assignments of error are presented for consideration as to questions contained in special verdict. It does not seem advisable to consider them in detail, though we will do so in a general way. The verdict as framed by the learned court cannot well be considered a safe model to be followed. However, generally speaking, it covered the case, confused though it was with some unnecessary questions, and faulty in not containing questions covering clearly the precise matters of fact in controversy on the evidence. This court has said so many times that a special verdict should be composed only of a sufficient number of questions to cover singly the issues raised by the pleadings, material to the case and controverted on the evidence, so worded that each question, so far as practicable, shall be susceptible of affirmative or negative answer, that nothing can be gained, it seems, by a repetition in that regard. Strict attention to this matter is a judicial duty.

Here, there was no dispute but what the respondent was injured at the time alleged in the complaint. No question

on that point, therefore, was needed. The only negligence pleaded was failure on the part of defendant to seasonably repair a wornout condition of the main mill floor. That, at the most, required these questions: (a) Was there a hole in the mill floor as alleged? (b) If there was such a hole, did the defendant know thereof a sufficient length of time before the accident, by the exercise of ordinary care, to repair the same before such time? (c) If there was such a hole, had it existed for such length of time before the accident that defendant, in the exercise of ordinary care, should have discovered and repaired the same before such time? An affirmative answer to the first and to either of the others would have established the negligence complained of as a matter of law.

It will readily be observed that the matters covered by the suggested questions were distinctly pleaded as the ground of negligence relied on and were distinctly put in issue by the answer and were clearly controverted on the evidence. The trial court's question: "Was the defendant guilty of negligence which caused plaintiff's said injury?" was in legal effect the three suggested questions combined. That is not the manner the special-verdict statute contemplates that such matters shall be submitted to a jury, though under proper instructions such method has not been condemned as fatally erroneous. However, we may well say in passing, trial courts should not feel at liberty to commit all errors which have been or may be held not fatal to the result which may finally be reached.

The next issue of fact in order was whether the existence of the hole in the floor, if one did exist as alleged, was the proximate cause of the plaintiff's injury. On that a question should have been submitted about like this: If you answer the first question and either the second or third in the affirmative, were such facts the proximate cause of plaintiff's injury? That would have sufficed for these four questions

which the learned court submitted: (a) "Was the defendant guilty of negligence which caused plaintiff's said injury?" (b) "Was plaintiff's said injury produced by reason of negligence of his co-employee, Hanson?" (c) "Was defendant's alleged negligence the proximate cause of plaintiff's said injury?" (d) "Was plaintiff's said injury caused by the combined negligence of defendant and that of the plaintiff's co-employee, Hanson?" There was no issue on the pleadings or the evidence warranting the questions designated as (b) and (d). Moreover, whether the injury was caused by the combined negligence of the defendant and his co-employee, Hanson, if there had been such an issue in the case, which there was not, was entirely immaterial since such mere contributory negligence of a co-employee is not a defense in a case of this sort. *Jones v. Florence M. Co.* 66 Wis. 268, 284, 28 N. W. 207; *Paulmier v. Erie R. Co.* 34 N. J. Law, 151; *Franklin v. W. & St. P. R. Co.* 37 Minn. 409, 34 N. W. 898; *Hunn v. Mich. Cent. R. Co.* 78 Mich. 513, 44 N. W. 502; Beach, Contrib. Neg. § 305. So by submitting the four questions instead of the one, the rule was violated that immaterial matters should not be included in a special verdict; also the rule was violated that questions should not be so framed as to cross-question the jury, and the further rule was violated that no question should be included in a special verdict not covering a distinct issuable controverted fact.

Complaint is made because of failure to submit a question covering the subject of assumption of risk. There are two answers to that: (1) There was no such issue in the case either by the pleadings or on the evidence. (2) The general question on the subject of contributory negligence sufficiently covered the form of such negligence called assumption of the risk in the absence of any request for a particular submission of such matter. *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554.

The court said to the jury: "You are instructed that it

was the duty of the defendant to provide a place that was reasonably safe for the plaintiff to do his work in while in the exercise of ordinary care," and gave further instructions in connection therewith, well calculated to impress upon the minds of the jurors the idea that such rule applies, not only to the time the working place is originally furnished to the servant, but to every instant of time thereafter during the period of his employment. That was very misleading.

True, it is the duty of the master to furnish the servant with a reasonably safe place in which to work. True, that duty is absolute. It cannot be delegated by the master. It cannot be performed by him by merely exercising ordinary care to furnish such place. It is satisfied only by the actual furnishing thereof. But that refers to the time when the servant is put to work, not to every time when, thereafter, in the course of continuous employment, at the customary intervals, he re-occupies his place, nor to every instant of time during the period of his employment. A reasonably safe working place having been furnished the servant, the absolute duty in that regard is satisfied. Then becomes active the secondary duty to exercise ordinary care to preserve for the servant the reasonably safe condition of his working place. In case of its becoming unsafe during the course of his employment, and the servant receiving an injury thereby before the master has knowledge of the existence of the danger or has reasonable opportunity to obtain such knowledge, and reasonable opportunity to remedy the danger, he is not liable. *Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520, 32 N. W. 529; *Paine v. Eastern R. Co.* 91 Wis. 340, 346, 64 N. W. 1005; *Quincy C. Co. v. Hood,* 77 Ill. 68; *Baldwin v. St. L., K. & N. R. Co.* 68 Iowa, 37, 25 N. W. 918; *Stapf v. V. Loewer's G. B. Co.* 1 App. Div. 405, 37 N. Y. Supp. 256; *Artis v. Buffalo, R. & P. R. Co.* 3 App. Div. 1, 37 N. Y. Supp. 977, 38 N. Y. Supp. 42; *Park Hotel Co. v. Lockhart,* 59 Ark. 465, 28 S. W. 23; *Wabash, St. L. & P. R.*

*Co. v. Locke,* 112 Ind. 404, 14 N. E. 391; *St. Louis, Ft. S. & W. R. Co. v. Irwin,* 37 Kan. 701, 16 Pac. 146; *Mickee v. Walter A. Wood M. & R. M. Co.* 77 Hun, 559, 28 N. Y. Supp. 918; *Haskins v. N. Y. Cent. & H. R. R. Co.* 79 Hun, 159, 29 N. Y. Supp. 274; *Binns v. R. & D. R. Co.* 88 Va. 891, 14 S. E. 701; 20 Am. & Eng. Ency. of Law (2d ed.) 92, 93, and cases cited in the note.

The courts have spoken thus decisively on the subject last discussed:

"It was incumbent on the plaintiff to show affirmatively that at the time the accident happened" the condition of the track "was either known to the company or had existed for such length of time before the accident as to constitute notice to the company that the track was in an unsafe condition at that place." This court speaking by TAYLOR, J., in *Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520, 525.

"The duty to provide a reasonably safe place for the employee to perform his service in rests upon the master, and that duty is one that cannot be shifted or evaded by any attempt to delegate it." "This duty is also a continuing one to the extent that the master must provide reasonably for the inspection and if need be for the repair of premises and appliances." MONTGOMERY, J., in *Anderson v. Mich. Cent. R. Co.* 107 Mich. 591, 65 N. W. 585.

"The doctrine that the master must provide a safe place has no application to the case where the place becomes unsafe during the progress of the work." McCLAIN, J., in *Oleson v. Maple Grove C. & M. Co.* 115 Iowa, 74, 87 N. W. 736.

The language of this court by Mr. Justice WINSLOW in *Paine v. Eastern R. Co.* 91 Wis. 340, is quite as decisive.

In submitting the subject of proximate cause to the jury the learned court used the term "approximate," both in the questions for the special verdict and the instructions. In this case probably the misuse of terms was not harmful since the court gave as an explanation of what was called "approximate cause" a fairly accurate definition of *proximate* cause.

Quite inexcusable error was committed, we feel called

upon to say, in view of the many recent decisions of this court on the subject, in that the court while submitting the case to the jury for a special verdict gave at considerable length general instructions.     Such instructions, as has often been said, are wholly unsuitable in case of a special verdict. It may be that it was supposed by the learned court that since the verdict was required upon the court's own motion, instead of in response to the demand of counsel, a different rule would apply than the one so many times emphatically proclaimed by this court.     If so, the supposition was baseless.     There is no reason for the instructions to be specifically directed to the special questions in case of a special verdict, when required by counsel, that does not apply, just as strongly, when it is otherwise required.     This court has held upon due consideration of the matter that in case of such a verdict the parties to the litigation are entitled, as a matter of statutory right, to have the jury instructed as to the particular questions submitted, and not generally at all. *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311; *Van de Bogart v. M. & M. P. Co.* 127 Wis. 104, 106 N. W. 805; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 388, 75 N. W. 169; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 219, 78 N. W. 442; *New Home S. M. Co. v. Simon,* 104 Wis. 120, 80 N. W. 71; *Brunette v. Gagen,* 106 Wis. 618, 82 N. W. 564; *Rhyner v. Menasha,* 107 Wis. 201, 206, 83 N. W. 303; *Sladky v. Marinette L. Co.* 107 Wis. 250, 259, 83 N. W. 514; *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; *Byington v. Merrill,* 112 Wis. 211, 88 N. W. 26; *Cullen v. Hanisch,* 114 Wis. 24, 37, 89 N. W. 900; *Okonski v. Pa. & O. F. Co.* 114 Wis. 448, 457, 90 N. W. 429; *Gutzman v. Clancy,* 114 Wis. 589, 90 N. W. 1081.

This instruction was given to the jury on the subject of damages: "You will also assess all such sums as you are

satisfied from evidence will recompense him for all future suffering, both mental and physical." That was prejudicially erroneous. The jury should have been limited in assessing damages for future suffering, mental and physical, to such loss, in that regard, as the evidence satisfied them would be reasonably certain to result from the injury. *White v. Milwaukee C. R. Co.* 61 Wis. 536, 21 N. W. 524; *Hardy v. Milwaukee St. R. Co.* 89 Wis. 183, 187, 61 N. W. 771; *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 380, 61 N. W. 1101; *Raymond v. Keseberg,* 91 Wis. 191, 64 N. W. 861; *Groundwater v. Washington,* 92 Wis. 56, 61, 65 N. W. 871; *Kliegel v. Aitken,* 94 Wis. 432, 438, 69 N. W. 67; *Collins v. Janesville,* 99 Wis. 464, 465, 75 N. W. 88; *Boelter v. Ross L. Co.* 103 Wis. 324, 330, 79 N. W. 243.

Error is assigned, raising the question as to whether the evidence presented a fair jury question regarding whether respondent received his injury in the manner he claimed he did. A careful study of the record has resulted in some hesitation in reaching a satisfactory conclusion in respect thereto. It certainly seems quite improbable that one could have his hand caught between the belt and rim of a· heavy iron pulley, twenty-four inches in diameter and eight inches on the face, revolving at the rate of 600 revolutions per minute or sixty feet per second, the sides of the pulley being within three inches of the sides of a box inclosing it, and that the arm could be carried down and around the pulley to a point of release, dragging it necessarily in between the sides of the pulley and the sides of the box, and forcibly jerking the body forward, without much more disastrous consequences than occurred in this case. To the majority, but not all, of the members of the court the respondent's story does not seem wholly improbable. Again, the almost overwhelming evidence that the respondent stated, on numerous occasions after he was injured, that he did not know how the injury occurred; that the story told upon the trial

was not known to any one, so far as appears, till the action was commenced, and two apparently credible witnesses examined the condition of things at and in the vicinity of the alleged scene of injury shortly after the accident and found all in order, while, if respondent's testimony be true, the door of the sawdust box must have been left down from the time of the accident till some one other than himself replaced it, and still other circumstances that might be referred to, involving the matter in doubt, lead to the conclusion, on the part, at least, of the writer, that the evidence, as a whole, did not remove the question of how the accident occurred from the realms of mere conjecture and so did not present a fair jury question under the rule laid down in *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729. However, by far the prevailing opinion is that the respondent's positive story of how his injury was received was not so incredible but what it was permissible for the jury to believe it and to base a verdict thereon. That rules the case on that subject in his favor, so the decision must be and is that the question in relation thereto was properly submitted to the jury.

Further complaint is made that the damages assessed are grossly excessive. The man was thirty-one years of age when he was injured. He was capable of earning $2.50 to $3 per day. He was not a common laborer, but an engineer. The evidence was to the effect that his arm near the shoulder and the shoulder were partially paralyzed and that the balance of the arm was totally so; that the motor and sensor nerves were destroyed beyond any reasonable expectation of restoration, leaving his arm practically a dead body: an incumbrance. The evidence tended to if it did not conclusively show that such condition would not materially change for the better. Manifestly from such evidence the respondent's injury was a very serious one. It was much more so than the mere loss of an arm would be. The circumstance also is quite material that the injured mem-

ber was the right arm. A careful examination of the prece-
dents satisfies us that we would not be justified in con-
demning the verdict as fatally excessive, though doubtless
it approached dangerously near the border line thereof, not-
withstanding, as indicated, the injury was a very severe one.

*By the Court.*—The judgment is reversed, and the cause
remanded for a new trial.